No. 59.—THOMAS ECHOLS and WIFE, *et al.* plaintiffs in error, *vs.* JAMES W. BARRETT, admr. &c. defendant.

[1.] By a fair construction of the Statutes of this State, executors, administrators and guardians are required to take the oath prescribed, *before the Court of Ordinary.*

[2.] Where it appears from the record of the Court of Ordinary, that an administrator appointed by the Court, was one of the Justices presiding at the time of making the appointment: *Held*, that the appointment was void, for the reason, no one can be a judge in his own case.

[3.] In an action of trover, brought to recover the possession of a negro, by the administrator with the will annexed, the will is not competent evidence to show *property* in the testator to the slave, at the time of his death, by his *declarations* therein contained, that he *loaned* the negro to his son, through whom the defendants claimed title, and who had had the possession of the slave for twelve months anterior to the death of the testator.

[4.] The division of a testator's estate, by the legatees under the will, by consent, is no defence to an action at law brought by the legally appointed administrator, with the will annexed, to recover the possession of the testator's property, for the purpose of making a due and legal administration thereof.

[5.] Where a father *loans* a negro to his son, and delivers possession thereof, and the son sets up an *absolute* claim to the slave, and offers to sell him as his own property, the father having *notice* of such absolute claim and offer to sell, the possession of the son becomes adverse from that time, and the Statute of Limitations will commence running from the time of such adverse possession in favor of the son against the father.

Trover, in Clarke Superior Court. Tried before Judge DOUGHERTY, February Term, 1849.

This was an action of trover for a negro boy, Edmund, brought by James W. Barrett, as administrator, with the will annexed, of Henry Huff, deceased, against Elizabeth Huff, the widow of John Huff, who, pending the suit, intermarried with Thomas Echols,

William Akridge and Virgil W. Akridge.	The defendants plead-
ed the general issue and the Statute of Limitations.

Upon the trial, the plaintiff offered in evidence the following
certificate of the Clerk of the Court of Ordinary of Clarke Coun-
ty, to show that he was the legally appointed administrator :

"REGULAR TERM, May 3d, 1847.

" Present, their Honors Aaron F. Nunnally, Elizur L. Newton,
Thomas Simonton, John W. Cook and James W. Barrett :

" *Ordered,* That James W. Barrett be, and he is hereby, ap-
pointed administrator, with the will annexed, on the estate of
Henry Huff, deceased, and that the Clerk take bond and security
in the sum of one thousand dollars, in terms of the law, out of
term time.

" RECESS, May 29, 1847.

"Pursuant to an order passed at the last term of the Court,
James W. Barrett was qualified as the administrator, with the will
annexed, on the estate of Henry Huff, deceased, on his giving
bond and security in the sum of one thousand dollars, to whom
letters of administration, with the will annexed, accordingly issu-
ed in terms of the law.

" ASA M. JACKSON, C. C. O."

To this evidence defendants' counsel objected, on the ground,
that the evidence showed that the administrator was not qualified
before the Court, as required by law, and farther, because the ad-
ministrator appointed, was a Judge presiding at the time of his
own appointment.	The Court overruled the objection, and coun-
sel excepted.

The plaintiff offered in evidence, the will of Henry Huff, his
testator, by the second clause of which, the boy, Edmund, was
loaned to John Huff for life, and at his death without heirs, to be
divided among his surviving brothers and sisters.	The defend-
ants' counsel objected to the evidence, which was admitted by
the Court, and counsel for defendants excepted.

Defendants' counsel proposed to prove, that at the death of
Henry Huff, after his will was carried to probate, all the legatees
being of full age, had divided his estate according to the will, and
acquiesced in such division; that there were no debts then nor
now, and that this administration was taken out to recover this
negro for the remainder-men mentioned in the will. The Court re-
jected the testimony, and defendants excepted.

Echols and Wife *et al. vs.* Barrett.

There was considerable evidence on both sides. The plaintiff contending that the property went into the possession of John Huff as a loan, and the defendants contending it was a gift, and if a loan originally, that there had been four years' adverse possession. To sustain this last plea, the defendants offered the evidence of one Samuel Braswell, who swore, that "he had often heard John Huff offer to sell the boy. Henry Huff asked witness if he knew of John Huff offering to sell the boy. Witness told him he had heard him offer to sell. Henry Huff said nothing in reply. This was not long before his death."

The testimony being closed, the defendants moved for a nonsuit, on the ground, that under this will the remainder-men, and not the administrator, should sue for this negro. The Court overruled the motion, on the ground that no executor had ever qualified and assented to the legacy, and that the division by the legatees, and their acquiescence therein, did not have the effect of an assent. To which decision defendant's counsel excepted.

The Court charged the Jury, among other things, "That if John Huff received the negro as a loan, his possession was not adverse to Henry Huff, and the Statute would not run in his favor until the character of his possession was changed. To effect such change, the defendant had offered evidence, that John Huff had offered to sell the negro, and that Henry Huff had notice thereof. The mere act of offering to sell the boy was not sufficient of itself to make the possession adverse, but that fact must be brought to the knowledge of Henry Huff. An offer by John Huff to sell any qualified or limited interest or claim he might have or claim in the boy, would not constitute his possession adverse, since he might have such right and the same be consistent with paramount title in another. The witness, Braswell, has stated a general offer to sell, and the Jury might regret that he was not more specific, since this is a matter of fact, of which the Jury are the exclusive judges, and with which the Court has nothing to do; that the Jury had heard all the evidence, and were the judges of the same; that if they believed, from the evidence, that John Huff claimed an absolute property in the negro, and offered to sell the same, and that Henry Huff had notice thereof, that the Statute commenced running in John's favor from that time, as his possession then became adverse, and if four

years had elapsed from that time before the commencement of this suit, they should find for defendants.

To which charge the counsel for defendants excepted—

1st. Because that part of the charge about " offering to sell the qualified or limited interest of John in the negro," was about a state of facts of which there was no evidence before the Jury.

2d. Because that part of the charge referring to the testimony of Braswell, was calculated to mislead the Jury, by casting doubt upon testimony in itself perfectly plain.

And upon these several exceptions error has been assigned.

T. R. R. Cobb and N. G. Foster, for plaintiffs in error.

G. B. Haygood and J. Hillyer, for defendant.

*By the Court.*—Warner, J. delivering the opinion.

The first ground of error assigned to the decision of the Court below is, the admission of the certificate of the Clerk of the Court of Ordinary, as a part of the plaintiff's title to the negro sued for.

[1.] The plaintiff below sued, as the administrator, with the will annexed, of Henry Huff, deceased, and to make out his title to recover, he offered in evidence the certificate mentioned in the record, to establish his appointment as such administrator. Two objections were made to its admissibility. First, because it appeared, on the face of the certificate, that the administrator was not qualified *before the Court of Ordinary.* Second, because it appeared on the face of the certificate of the Clerk of the Court of Ordinary, that the administrator was one of the Justices of the Court, presiding at the time the judgment of the Court was rendered, appointing himself such administrator.

Both objections, in our judgment, were well taken, and should have been sustained by the Court below. By the fifth section of the Act of 1792, every executor, or administrator with the will annexed, is required to take the oath prescribed by that Act, well and truly to execute the same, *at the time of proving the will,* or *on granting administration.* By the seventh section of the same Act, every administrator is required, when letters are granted to him, to take the oath prescribed, *before* the Register of Probates. *Prince,* 227. The Court of Ordinary has been substituted in the place of the Register of Probates. By the first section of the

Echols and Wife *et al. vs.* Barrett.

Act of 1810, it is declared, the Inferior Court, when sitting for Ordinary purposes, shall have the *original jurisdiction* of all testate and intestate estates, appointing administrators and guardians, to *qualify* executors, administrators and guardians, &c. *Prince,* 239. The Act of 1820, requires that the oath of a guardian, appointed by the Court of Ordinary, shall be taken *before the Court. Prince,* 244. The oath of an executor, administrator or guardian, should, in our judgment, according to a fair construction of the Statutes, be taken *before the Court of Ordinary ;* and as a matter of practice, we think it would be more regular, to have the oath prescribed by the Statutes, entered on the minutes of the Court of Ordinary, and sworn to and subscribed by the executor, administrator or guardian. Then the oath would constitute a part of the record.

The argument for the defendant in error is, that the Court is bound to presume the administrator was duly qualified, when letters of administration have been granted to him by the Court of Ordinary. Such, undoubtedly, would be the legal presumption, had the plaintiff below offered in evidence his letters of administration; but he did not offer in evidence his letters of administration; he offered in evidence a certified copy of the record from the Court of Ordinary, from which it affirmatively appears, that the administrator was not qualified *before the Court,* but was qualified out of term time, or, as the Clerk states, in the "recess." The certified copy of the record offered in evidence affords no ground for presumption that the administrator was qualified before the Court during term time, but, on the contrary, expressly rebuts it. To presume he was so qualified, would be to presume against the facts apparent on the face of the record. Presumptions cannot be received in opposition to affirmative facts. The Clerk certifies, that in the "recess," May 29th, 1847, James W. Barrett *was qualified* as the administrator of Henry Huff, deceased, pursuant to an order of the Court, passed at the *last term of the Court.* Whether he was qualified by the Clerk, in the "recess," or by some judicial officer, the record does not inform us.

[2.] With regard to the objection, that the plaintiff below presided in his own cause, at the time the judgment of the Court was rendered, appointing him administrator on the estate of Henry Huff, the record shows, that he was one of the presiding Justices

of the Court *at that time.* We are, however, asked to presume, that inasmuch as the record shows there were four other Justices presiding, that he retired, and did not preside at the time the order appointing him administrator was passed by the Court. As we have already said, to allow such a presumption to prevail, would be to presume against the facts apparent on the face of the record. The record does not show he retired from the judgment seat, but, on the contrary, shows that he was *there* as one of the presiding Justices when the order appointing him administrator was passed; and when a fact appears by the record, we do not feel ourselves at liberty to presume against the existence of such fact. That a party cannot be a judge in his own cause and give a judgment in his own favor, was not controverted on the argument.

[3.] The second ground of error assigned to the judgment of the Court below is, the admission of the will of the testator in evidence in favor of the plaintiff. The Court admitted the will as evidence of the plaintiff's title, and for *other purposes,* as the record informs us. That the will of the testator is admissible in some cases in favor of the executor or administrator, with the will annexed, is readily conceded; but under the state of facts presented by this record, we are of the opinion it ought not to have been admitted to show title in the plaintiff as against the defendants. The great question in the case, as appears by the record, was, whether Henry Huff, the testator, had *given* the negro in dispute to his son, John Huff, in his lifetime, or had only *loaned* him to his son—the defendants claiming title under John Huff. The only clause in the will which relates to the negro in dispute, reads as follows : " For the love and affection I have for my son, John Huff, I *loan* to him a negro boy named Edmund, so long as he may live, and after his death, to return to the surviving children, unless he should have an heir or heirs born to him—in that event, to go to them." The negro had been in the possession of John Huff, as one of the witnesses states, about one year before the testator's death. The testator had parted with the *possession* of the property in his lifetime. The will did not take effect until after the death of the testator. The administrator, with the will annexed, claims title to the negro as the legal representative of his testator, and to entitle him to recover as against the defendants, it was incumbent on him to have shown possession, or the right of possession, in his testator in his lifetime, by *competent* evi-

Echols and Wife *et al. vs.* Barrett.

dence.   The declaration of the testator, made in his will, that he had *loaned* the negro to his son, was not competent evidence, in our judgment, to establish that fact in favor of the administrator suing in his right.   A party cannot give in evidence his *own declarations* in support of his own title, for the purpose of divest= ing the title of another, the more especially when such declara- tions have been made subsequent to the declarant's having parted with the possession and title to the property.   *LaFarge vs. Knee- land,* 7 *Cowen's Rep.* 459.   *Phœnix vs. The Assignees of Ingra- ham,* 5 *John. Rep.* 412.   *Sprague vs. Kneeland,* 12 *Wendell's R.* 164.   *Exrs. of McKane vs. Bonner,* 1 *Bailey's Rep.* 115.   The principle is the same if the declarant be dead, and his declarations be offered for the benefit of his estate.   *Romig vs. Romig,* 2 *Rawle's Rep.* 241.   *Scull et al. admrs. of Irwin, vs. Wallace's Ex- ecutors,* 15 *Serg. & Rawle,* 231, '3.   The *right* of the administra- tor, with the will annexed, to recover the negro as a part of his testator's estate, if he constituted a part thereof, would be estab- lished by the grant of his letters of administration, or by the cer- tificate of the Clerk of the Court of Ordinary, showing that let- ters had been legally granted to him.   Assuming, as the Court below did, that the certificate of the Clerk of the Court of Ordi- nary was legal evidence of the appointment of the plaintiff as administrator, with the will annexed, on the estate of Henry Huff, such certificate afforded *sufficient evidence* of his right and title to the possession of the goods and chattels of his testator; but whether the negro in controversy constituted a part of his testa- tor's goods and chattels, at the time of his death, was a question of fact for the plaintiff to establish by competent testimony.   The will of the testator was not necessary to show his *title* to recover the possession of the negro; the grant of administration to him by the Court of Ordinary was sufficient for *that purpose.*   For what object, then, was the will introduced by the plaintiff?   For the *sole purpose,* so far as we can discover, to show the testator's *declarations,* after he had parted with the possession of the negro to his son, that he had *loaned* him to him; that the testator, at the time of his death, asserted *his title* to the slave, and this act of the testator, it is insisted, is competent evidence in favor of the testa- tor's legal representative in an action of trover, to recover the slave from the defendants, who insist that the testator made an ab- solute gift of the slave to his son, in his lifetime; the plaintiff in-

sisting that it was not a gift, but a *loan* merely, and being a loan only, he, as the representative of the testator, is entitled to have possession of the slave as a part of his testator's estate. For the reasons already stated, we are of the opinion that it was not competent for the plaintiff to have given in evidence the will of the testator, for the purpose of showing that his son had the possession of the negro under a *loan* from him in his lifetime; but that it was incumbent on the plaintiff, after showing his grant of administration, with the will annexed, to have also shown, by other competent evidence, that the slave in dispute was the property of his testator, at the time of his death, independent of any declarations made in his will to that effect.

[4.] The evidence offered by the defendant, going to show that the legatees were of full age, that there were no debts, and that the estate had been divided by *consent* of the legatees, &c. was, in our judgment, properly rejected by the Court. It is the policy of the law, that there should be a due and legal administration on all testate's and intestate's estates; and when letters of administration are granted by the Court of Ordinary, the administrator is clothed with full power and authority to reduce to his possession the estate of the decedent, and administer the same according to law, without regard to the private arrangements or agreement of legatees or distributees. We do not say, that after a great length of time having elapsed from the death of the testator or intestate, a Court of Equity would not interfere upon a proper case being made; but it would require that a very *strong case* should be made, in our judgment, to authorize a Court of Equity to interfere with the due course of administration of a testator's or intestate's estate.

The motion for a nonsuit was also properly overruled by the Court. If the negro was the property of the plaintiff's testator at the time of his death, he, as his administrator, was entitled to reduce him to possession, and make distribution thereof, as directed by the will, if not needed for the payment of debts. The private arrangements or consent of the legatees, as to the division of the testator's estate, could not have the effect to defeat the rights of the administrator under the law.

[5.] The next ground of error is to the charge of the Court to the Jury. If that portion of the charge of the Court excepted to, stood alone and disconnected with other parts of the charge, it would, in our judgment, be erroneous; but when we take the

Echols and Wife *et al. vs.* Barrett.

whole of the charge together, we are not prepared to say there is error in it, although we think that part of the charge which relates to the offer of John Huff to sell any *qualified* or *limited* interest or claim he might have to the negro, is objectionable, for the reason that the record does not disclose that there was any evidence going to show any offer to sell a *qualified* or *limited* interest in the slave. In *Paschal, admr. vs. Davis,* (3 *Kelly,* 260,) we held, that it was erroneous for the Court to charge the Jury on an *assumption* of facts that did not exist. The witness proved a *general offer* to sell the negro, and the Court stated to the Jury, that they might *regret* he was not more *specific*. The calling the attention of the Jury to the offer to sell a *qualified* or *limited* interest in the negro, when there was no evidence of an offer to sell such qualified or limited interest by John Huff, coupled with the expression of regret that the witness was not more specific on that point, was calculated to mislead the Jury, and to induce them to believe that there was *some evidence* of an offer to sell a qualified or limited interest in the slave by John Huff, and that it was a matter of *doubt,* from the evidence, whether he had offered to make a general sale of the negro, or to sell some special or qualified interest in him, when the offer to sell, as stated by the witness, was general and without qualification. While we are of the opinion that the particular portion of the charge excepted to as erroneous, had better been omitted by the Court, yet the latter portion of the charge states the law correctly, and fairly submits the question to the Jury. The Court charged the Jury, that they had heard all the evidence, and were the judges of the same; that if they believed, from the evidence, that John Huff claimed an absolute property in the negro, and offered to sell him, and that Henry Huff, the plaintiff's testator, had notice thereof, that the Statute commenced running in John's favor from that time, as his possession then became adverse; and if four years had elapsed from that time before the commencement of this suit, they should find for the defendants. We reverse the judgment of the Court below, on the grounds of error in admitting the certificate of the Clerk of the Court of Ordinary, and the admitting in evidence the will of the testator, and affirm the judgment of the Court on all the other grounds of error assigned upon the record.

Judgment reversed.