Nash, J.
 

 Mills Taylor died in the year, 1840, intestate, and leaving the following children: James P. Taylor,
 
 *529
 
 Elizabeth Jane, wife of John Gill, and Frances, the wife of William P. Forrest. Elizabeth died after her father, and John Gill, her husband, administered on her estate ; and William P. Forrest was then duly appointed administrator upon the estate of Mills Taylor, and took into his possession all of the personal property belonging to it. The intestate, at the time of his death, owned a number of slaves, which were divided among the children.
 

 The bill is filed against William Ik Forrest and his wife Frances, and against said Forrest, as administrator of Mills Taylor, by the other children, and those who represent them, for an account and settlement of the estate. It charges, that during his life Mills Taylor lent to William P. Forrest a negro boy by the name of Stephen, whom the said Forrest subsequently sold in the life-time of Mills Taylor for the sum of $ 1050 cash, which he appropriated to his own use, and for which he is chargeable, together with interest. It further alleges, that the defendant Forrest has exhibited a large account against the estate for the board of Elizabeth Jane Taylor, the intestate of the plaintiff, John Gill, which, it charges, is unjust, as the said Elizabeth was, during the time she staid with Forrest, a visitor at his own request, and, if she was a boarder, the charges are too high.
 

 The answer admits the sale of Stephen, and alleges, that he was
 
 given
 
 to the defendant Forrest by his father-in-law, Mills Taylor, when he was quite young and of little value ; and that he is an advancement to him, and that, as such, he is ready and willing to account for him. It further alleges, that for the time board for Elizabeth is charged, she was not a visitor with the defendant, but, he being a teacher, she was placed by her father with him, as a pupil, for whose board he promised to pay; and that he did, from time to time, furnish the defendant with provisions of different kinds, and for which he is duly-credited in the account filed by him.
 

 
 *530
 
 Upon the coming in of the answer, replication was taken, and upon the hearing, a decree for an account was made, and a reference to the Master had, to state the administration accounts of the defendant Forrest. The Master made a report, which is excepted to by both .parties.
 

 In arguing the exceptions the parties agreed to bring before the Court for the present only those relating to the .negro Stephen and the board of Elizabeth Jane.
 

 The 11th exception isas follows: that the Master, in and-by his said report, hath certified, that he finds that the negro boy Stephen was lent to the defendant and his wife Frances by Mills Taylor, the defendant's intestate, and has charged this defendant with the sum of $1050, for which the said negro was sold by the defendant; w’hereas the Master ought to have certified, that the said negro Stephen was given by the said Mills Taylor to the defendant and his wife Frances, and ought to have charged this defendant with only the value of said negro at the time he was delivered by the said Mills Taylor to the defendant and his wife Frances, and as an advancement to them. This exception must be allowed. It is not difficult to see how the Master was led into the error committed. All the testimony cited by him, as sustaining his view, arc conversations and declarations of Mills Taylor, held and made by him after the delivery of Stephen and in the absence of the defendant. This testimony is in. admissible. This point is fully established by the case of
 
 Cowan
 
 v.
 
 Tucker,
 
 8 Ire. 426.
 

 But another and much more important question is still to be disposed of. Stephen was sold by the defendant Forrest before the death of Mills Taylor. Was he, therefore, within the meaning of the proviso to the act of 1806 in the possession of the donee, so as to render it an advancement ? The language of the act is : “Provided that when any person shall have put into the actual posses
 
 *531
 
 sion of
 
 his or her child
 
 or children any slave, and the said slave shall remain in the
 
 possession
 
 of such child or children at
 
 the time of the death of such person,”
 
 &c. The case is very clearly not within the
 
 letter
 
 of the act — is it within its meaning ? We are told, that, if we adhere to the words alone of an act, we adhere to the bark. And if, in cases arising under the proviso to the act of 1806, we adhere strictly to the words, not one half of them can take effect. In this case, the delivery, the gift, was made to Forrest — he was not the
 
 child
 
 of Taylor; and yet was it ever doubted such a gift came within the act ? And why † because it is certainly within the meaning of the proviso. We are at liberty to look to the meaning of the act; and that meaning is the law, when discovered. What, then, did the legislature mean in using the Words — “and the said slaves shall
 
 remain in the possession
 
 of such child at the time of the death of such person.” It means, that the parol gift shall take effect, as an advancement, in all cases, where the parent dies intestate W'ithout
 
 resuming the possession.
 
 Such is the opinion of the Court in
 
 Stallings
 
 v.
 
 Stallings,
 
 1 Dev. Eq. 298. The language of Judge Haul is, “if the parent
 
 suffered
 
 the child to remain in possession during his life,” &c. “The law is intended to give the parent a power over property thus situated, but if he did not
 
 think proper to exercise
 
 it., the property should then be considered an advancement.” The language of Judge Henderson in the same case is, “The act of putting the property into the possession of the child makes the gift, if it be not subsequently
 
 revoked,
 
 or if
 
 consummated
 
 by the parent’s
 
 permitting
 
 the slave,” &c. The language of the Chief Justice in
 
 Cowan
 
 v.
 
 Tucker,
 
 5 Ire. 80, is still stronger, to the same effect__ Speaking of the proviso, we are considering, he says, “It meant merely, that where a parent intended to make a gift to a child and put the slave into his possession and did not in his life time refract the gift, nor dispose of the
 
 *532
 
 property by making a will,” &c. So far as the parent’s right to the slave is concerned, the gift is not consummated until his death. lie may,at any time revoke it, either by taking possession, or disposing of him by will. If he does neither, it is evidence that he intended the gift to take effect as an advancement. And as he can reclaim the negro from the possession of any one, if that possession has not been ripened into a good title by his laches ; so it makes no difference, in whose possession the slave actually is at the time of his death. When the case of
 
 Cowan
 
 v.
 
 Tucker
 
 was a second time before the Court, 8 Ire. 426, the same idea was again expressed by the Court —namely : that not resuming the possession by the parent and his failure to make any other disposition during his life, is substantially the case stated in the proviso; and the slave is to be considered as in the possession of Forrest at the time of the death of Taylor, and was, therefore, an advancement to him ; and is to be valued at the time of the delivery. The plaintiff’s first exception is over-ruled, in confirming the exception of the defendants.
 

 The 13th exception of the defendants is overruled. — . "We are of opinion, from the proofs in the case, that the price allowed by the Master for the board of Elizabeth Jane was a fair and proper one ; and that she was nota visiter at the house of the defendant, but a boarder. — ■ This embraces the plaintiff’s 2nd exception, which is also overruled.
 

 The 14th exception of the defendant is sustained, as the conclusion of the Master was arrived at through an error as to Stephen.
 

 Per Curiam.
 

 Decreed accordingly.