Cornett, adm'rx, *vs.* Fain.

JULIA A. CORNETT, administratrix, etc., plaintiff in error, *vs.* WILLIAM P. FAIN, defendant in error.

1. In an action by A. to recover of B. the price of a negro sold by B. to C., the demand is liquidated, because certain and bears interest.
2. When there is a conflict of testimony, and the preponderance rather with than against the finding of the jury, the Court will not disturb the verdict.
3. When upon the intermarriage of a son-in-law with a daughter, or shortly thereafter, a negro is delivered by the father-in-law to his daughter, who exercises ownership over the same for some time, and the slave goes back into the possession of the father-in-law, his declaration explanatory of the previous possession by the son-in-law is not evidence.

Assumpsit, from Gordon Superior Court. Tried before Judge WALKER, at October Term, 1861.

This action was brought by W. P. Fain, to recover of Julia A. Cornett, administratrix of U. D. Cornett, $1,000, the proceeds of the sale of a negro woman, Thena and her two children, the property of said Fain, and sold by defendant's intestate. Plaintiff was the son-in-law and defendant the widow of U. D. Cornett. Plaintiff's right to recover was based upon a gift of the negroes to him by the intestate, and on the trial he introduced the following testimony:

L. S. SIMS testifies, that he bought a negro woman named Thena and her two children, Antona and Jane, on the 27th of June, 1853, from U. D. Cornett for $1,000, cash. Thena was about thirty-two years old, small and unlikely, and of copper color; Antona about four years old, a very likely mulatto girl, and Jane about eighteen months old and very unlikely. He sold the negroes afterwards for $1,100. I bought the negroes, believing them to be the property of U. D. Cornett.

JOEL FAIN, in answer to interrogatories, testifies: that U. D. Cornett purchased a negro woman Thena and her child, at a sale of negroes in Rome on the first Monday in January, 1850. On the day before the sale, Cornett told me that he was going there to purchase a woman for his daughter, Sarah, who

was then the wife of W. P. Fain. Cornett told me frequently during the years 1850 and 1851, that he had given the negroes to Fain. In 1850, after the purchase, I saw the negroes in the possession of Fain in Paulding county, and in 1851 Fain had them in possession and carried them to Gordon county when he moved there. Fain moved from Paulding to Gordon one year, and I think, from January till March, after Cornett purchased the negroes. I did not sell the negroes to Cornett, but he purchased them as before stated. Fain had them in possession over one year previous to his moving to Gordon county, at which time he went to board with Cornett, and continued to do so until he moved to the town of Calhoun, in the latter part of 1851. During the time Fain was boarding with Cornett in 1851, I heard Cornett say, that owing to the bad disposition of the woman, Thena, he expected he would have to take her back and put another in her place, which, however, he never did. I saw the negroes frequently in Fain's possession while he was keeping house to himself, a little over one year before he went to Cornett's to board.

CROSS-INTERROGATORY.—All I know of the negroes belonging to Fain was from conversations with Cornett, and from seeing them in Fain's possession.

ALLEN RAINWATER answers to interrogatories, that U. D. Cornett told me that he had to buy a negro for Fain, who had married his daughter, and that he was going to do so. After Cornett had purchased Thena and her child, he told me that he had bought them for Fain and his wife. Soon afterwards Fain and his wife came to Cornett's house; Cornett was at home. When they left they took home the woman and child; think this was in 1850, and in Paulding county. I lived about fifty or sixty yards from Cornett's house and was familiar with the family; have often heard Cornett speak of buying a negro for his daughter long before he bought the woman and child for Fain, and that he had given said woman to Fain.

JAMES MOORE deposes, in answer to interrogatories: I lived with Cornett during 1851, and while I was living

there, Fain brought a negro woman, named Thena, and her child, to Cornett's, and left them there. Cornett told me he bought the negroes for Fain, and that they belonged to Fain. He also told me that he had delivered the woman to Fain in Paulding county, and that Fain came to Gordon county when he left the woman at Cornett's house. During my stay with Cornett, Fain lived in Calhoun, and wanted a servant, and Cornett asked me if I could spare the woman out of the crop, and I told him I would need all the help I had; then Cornett hired another negro woman for Fain, in lieu of Thena, that she might continue in our crop. Cornett said to me several times that Thena and her child belonged to Fain. Fain clothed the negro woman and child, and claimed them as his own property all the time.

CROSS-INTERROGATORY—Cornett gave but one reason for giving Thena and her child to Fain, and that was to wait on his daughter. I derive my knowledge from what Cornett told me. He did not make the gift in my presence. I saw the woman and child last in Cornett's possession. He had possession, and used them as his own, except that they were clothed by Fain. Cornett did not tell me, or in words to that effect, that he had loaned the negroes to his daughter, Mrs. Fain, or let his daughter have her to use, etc., but that his daughter disliked the negroes, and would not have them.

Plaintiff here closed, and defendant introduced testimony as follows:

JOSEPH J. PRINTUP testifies: I was frequently at Cornett's house, lived near him during the latter part of 1850, the year 1851, and since to the time of his death, which occurred in 1853. I saw the negroes in possession of Cornett, who exercised acts of control and ownership over them from the time I first saw them until the time of selling them. Fain and his wife lived with Cornett during part of 1851. I heard two different conversations between Fain's wife and her father, in the presence of Fain, in one of which Mrs. Fain stated to me that her father wanted her to have Thena and her children, and that she would not have them, that if her father could not give her a better negro than Thena, she

would not have any. In the other conversation, her father wanted her to take Thena, but she would not have her, that she did not want any negro unless her father could give her a better one than Thena.

Defendant next introduced a bill of sale, warranting the soundness of the woman, Thena, and her daughter, Antonia, of the negroes sued for, from Cornett to Sims & Higdon, dated 27th June, 1853.

Mrs. MARY CORNETT, in answer to interrogatories, deposes: That she heard Cornett say that he never had given the negroes to any one, nor did he ever intend to give them to any person. Cornett said the reason why he never intended to give any negro property to plaintiff, was because he was a merchant, and he was afraid he would break, and spend the property, and that he only loaned the negroes to plaintiff a short time.

CROSS-INTERROGATORY—Uriah D. Cornett was my son, and Fain married my grand-daughter. I am between sixty-five and seventy years of age. The conversation alluded to in my direct examination took place at Wade H. Jones', in Troup county. No one was present. All that I know about the negroes being in the possession of Cornett at the time of the conversation, was, that Cornett told me he had the negroes in Gordon county at that time.

W. C. BEWLEY deposes: I was frequently at Cornett's house in 1851, and saw the woman, Thena, and her child in possession of Cornett several times during that year. Fain and his wife lived at Cornett's a large part of 1851; thinks till fall of that year. I wished to purchase the woman and child, and went to Cornett's house to do so. Cornett, Fain and his wife were sitting in the piazza. Cornett said he was offering them for sale, and went with me to the kitchen to show them to me. I did not purchase. Fain did not object to Cornett's selling the negroes to me; he said nothing one way or the other; made no claim to them.

ROBERT C. FAIN testifies: I had a conversation with plaintiff, in the town of Calhoun, about the negroes. Plaintiff told me in that conversation, either that he had refused

to bring the negroes home from old man Cornett's, or that he had sent them back. My best recollection is that he said he had sent them back; that old man Cornett had been paying taxes on them, and that he did not want to raise negroes for other persons. Before counsel commenced interrogating this witness he stated that he was a little deaf.

CROSS-EXAMINED.—Don't remember who was present at the conversation, or if any one was, nor what year it was, but it was the year after Fain moved from Polk county to Gordon, and before the death of Fain's wife. I frequently heard Cornett say that he bought the negroes for his daughter, Mrs. Fain. Cornett sent them to Fain's house, and they remained there until Fain moved to Gordon county, and he exercised acts of ownership over them.

The testimony being closed, the Court charged the jury, among other things, that if they believed the negroes belonged to Fain at the time Cornett sold to Sims, they should find for the plaintiff $1,000, with interest from the 27th of June, 1853, the date of the bill of sale to Sims. To this charge defendant excepted. The jury found in favor of plaintiff for $1,000 with interest from 27th June, 1853, and counsel for defendant moved the Court for a new trial on the grounds following, to wit:

1. Because the defendant proposed to prove by Colonel Joseph J. Printup, that he had frequently heard Uriah D. Cornett say, in the year 1851, when he was in the possession of the negroes, and before and since that time, that he never had given the negroes to plaintiff, and never intended to do so, but that he did intend, at some future time, to give them or other negroes to his daughter, the wife of plaintiff, and her children, if any, and in case she should die childless, said negroes should revert to his estate, and that he never intended, in any event, for the title to pass to Fain, because his creditors would get them, or the benefit of them, and other sayings of the deceased explaining the possession of the negroes by Fain, which evidence was repelled by the Court, on motion of plaintiff's counsel.

2. Because the Court erred in charging the jury, that if

they should find for the plaintiff, that their verdict should be for $1,000 and interest thereon from the day that Uriah D. Cornett sold said negroes.

3. Because the verdict was contrary to law and strongly and decidedly against the weight of evidence. The Court refused the motion on all the grounds therein stated, and this refusal is alleged to be error.

SHROPSHIRE, UNDERWOOD, for plaintiff in error.

DABNY, *contra.*

*By the Court*—LUMPKIN, J., delivering the opinion.

1. This was a liquidated demand and bore interest, according to the ruling of this Court in Nisbet vs. Lawson, 1 Kelly, 275. Fain was compelled to recover the precise sum which Cornett received from Sims, or nothing. The amount being fixed by operation of law it was liquidated, and consequently bore interest.

2. There would be such a conflict of testimony, had the evidence excluded been admitted by the Court, as would prevent this Court from disturbing the finding of the jury upon the facts. As the case stood, the weight of evidence was strongly and decidedly for Fain, instead of Cornett.

3. Was the Court right in rejecting the testimony of Jos. J. Printup. The gift of the slave was complete from Cornett to Fain, independent of the declarations of Cornett. Upon the intermarriage of Fain with Cornett's daughter, or shortly thereafter, Thena went into Fain's possession, who, for some time thereafter, exercised acts of ownership over her. The law construes this into a gift. Subsequently, the girl is found in the possession of Cornett, who sold her to Sims, and it is proposed to prove by the witness, Printup, the sayings of Cornett while thus possessed of the negro, explanatory of the previous possession of Fain. It is clear, we think, that this cannot be done. The legal title of Fain could not be divested in this way. The delivery of the slave by the father-in-law to the son-in-law, and the subsequent re-delivery by the

latter to the former; are, in the eye of the law, very different things. The first, as we have said, constitutes a good gift; the latter amounts to nothing. There must be a conveyance from Fain to Cornett upon sufficient consideration. None such is shown or attempted to be proven. Upon the most favorable or best of the proof, it amounts only to this : "We don't like Thena; substitute another negro in her place." Cornett, as the testimony shows, promised to do so, settling the property upon his daughter and her children. This he has never did nor offered to do.

We repeat, the legal title was in Fain. He has done nothing to divest himself of it. His property has been sold to another, and repudiating the tort, he seeks to recover the purchase-money. He is entitled to do so.

Let the judgment be affirmed.