HILTON and another, Executors, Respondents, vs. RAHR and wife, Appellants.

*November 19—December 7, 1915.*

*Gifts* inter vivos: *Evidence: Competency: Self-serving declarations: Invalid will: Transfer of note by parol: Mistake of trial court as to law: Appeal: Findings presumed to rest on competent evidence only: Witnesses: Competency: Transactions with person since deceased.*

1. Self-serving declarations, whether oral or written, not part of the *res gestæ*, are incompetent.
2. Declarations of a donor after a gift and in derogation of it are incompetent to disprove the gift.
[3. Whether, when the alleged acts and words of a gift are so ambiguous that the transaction might be either a gift or a bailment, declarations of the alleged donor contained in an abortive attempt by him to make a will or codicil are competent as verbal acts and part of the *res gestæ*, not decided.]
4. Oral comments by the trial judge, in deciding the case, upon the informality of a transaction by which, it was claimed, without any written transfer a father made a gift to his son of a note for a large amount executed by the son and secured by a mortgage, are *held* not to show that the judge believed the evidence insufficient in law to support a gift or that his finding against a gift was based upon an erroneous view of the law.
5. Where there is competent evidence sufficient to support a finding by the trial court, this court will presume, in the absence of an affirmative showing to the contrary, that such finding rests upon the competent evidence solely.
6. The question being as to whether a deceased father had in his lifetime made a certain gift to his son, the son was not competent to testify as to transactions or communications personally had with the father concerning which no witness had been examined in behalf of the opposite party.
7. In such case, where the son had been examined under sec. 3825, Stats., at the instance of the father's executors, his testimony then given was not admissible in his behalf.

APPEAL from a judgment of the circuit court for Winnebago county: CHESTER A. FOWLER, Judge. *Affirmed.*

The plaintiffs were the executors of the will of Charles Rahr, Sr.

For the appellants there was a brief by *Charles Oellerich,* attorney, and *Thompson, Thompson, Allen & Gruenewald,* of counsel, and oral argument by *Mr. J. C. Thompson* and *Mr. Oellerich.*

For the respondents there was a brief signed by *Bouck, Hilton, Kluwin & Dempsey;* a separate brief by *P. H. Martin,* of counsel; and oral argument by *Mr. Martin* and *Mr. E. J. Dempsey.*

TIMLIN, J.    The executors respondent brought this suit to foreclose a mortgage executed by the appellants to Charles Rahr, Sr., and had judgment of foreclosure and sale for a sum due, a sum to become due, solicitor's fees, and costs.    The appellants defended the foreclosure suit on the ground that the mortgagee, Charles Rahr, Sr., had prior to his death and in the month of August, 1911, made a gift of the note secured by this mortgage to his son, the appellant *Charles Rahr, Jr.* Appellants contend that the trial court erred in finding against such gift, and that the latter finding rests in some essential particulars upon an erroneous view of the law and upon incompetent evidence.

Immediately prior to the alleged gift the relations of the parties were such that the appellant *Charles* owed his father upon the note in suit $38,500, bearing interest at four per cent. per annum.    This note was secured by mortgage on the brewery property.    The son was paying interest to the father on this note at the rate of $30 per week, and the note was carried on the books of account of the son among bills payable as a liability.    The father had other notes and mortgages belonging to the son which the former held as collateral to the note for $38,500.    The family of the father consisted of his son, six daughters, and his wife, the mother of these children. On the day in question in August, 1911, the father was engaged in bringing to the office of his son in the brewery, not as a gift but as a business transaction, certain other notes and

mortgages and abstracts. He handed over the bundle of papers to the son without comment. Taking the papers, the son found among them the note in question, and, speaking German, called his father's attention to it and received a reply as follows: "Pa, hier ist die note du gagen mir hatte on die brauerei." The father answered: "Das ist deins, behalte es." The witness translates this: "Pa, here is the note you have against me on the brewery property." "That is yours, keep it." Nothing more was said by either father or son. There is some variance in detailing the exact expressions used, but nothing was said more strongly indicative of a gift than the foregoing. The note had indorsed on the back the following statement in the father's handwriting: "April 1st, 1910. Settled balance thirty-eight thousand five hundred." The son put the note away with his private papers and kept it until after the death of his father, which occurred on November 30, 1913. The father died testate leaving a will dated May 4, 1908. The will recited that no provision was made therein "for my son, *Charles Rahr,* because in my lifetime I have transferred to him my brewery business at a value much less than its real worth and which took into consideration his share of my estate." Evidence was offered tending to corroborate the truth of this recital. The indorsement on the note was explained by the fact that on the date mentioned it was ascertained that the balance due on the note, which was originally for $57,000, had been reduced by payments made by the son to $38,500. Among the papers of the father after his death, inclosed in a sealed envelope indorsed "My last will, to be opened after my death," was found a paper in the handwriting of deceased in words and figures following:

"Oshkosh, September 19, 1912.

"Today I have to change my last will, deposited with *Geo. Hilton.* I guess made in the year 1908. My daughter, Anna Sternberg, shall have her full share with my other

daughters, of my money, provided she promises never to live with her husband, Alfred Sternberg, again nor let him have any assistance, because he swindled me out of thirteen thousand dollars. My wife's money, thirty-eight thousand five hundred dollars, is on interest with my son *Charley,* secured by a mortgage on his property although made in my name, belongs to my wife. *Charley* has his full share of my and my wife's money, and promised not to claim anything after our deaths. After my death, the girls may divide what is left, share and share alike.

"CHARLES RAHR, Sr."     (Seal.)

This paper is referred to as Exhibit C.

There was some other evidence on the part of defendants tending in some degree to corroborate the claim that there was a gift. Exclusive of evidence challenged as incompetent there was, on the part of the plaintiffs, evidence tending to show that after the date of the alleged gift the son continued to carry this note in his bills payable account, and to pay interest thereon as before the gift; that he made verified reports to the federal and state income tax officers in which he listed this note as an outstanding debt; he made no attempt to get back his collateral or to get the mortgage securing the note, or to get a satisfaction of the mortgage; he told no one of his good fortune, not even his wife; he renewed fire insurance on the brewery, the policies containing a provision: "Loss payable to Charles Rahr, mortgagee, as his interest may appear." When he heard his father's will read he was, or affected to be, much dissatisfied because he was not provided for in some way, and he made no claim that there was a gift to him. He consented to probate of the will and waiver of notice, and being shown Exhibit C he still made no claim that there had been a gift. As late as January, 1914, he said to *Mr. Hilton,* one of the executors of the will, that if his father had only given him a diamond he would have been satisfied, and on a prior occasion after the death of his father he said to his sister, "He was no father to me, he was my worst enemy. He gave people like Sternberg and Mrs. Long anything for the

asking, but what did he give me, nothing but a few hundred dollars at the time I was married." It would serve no good purpose to pursue this branch of the subject further. There was evidence of unquestioned competency sufficient to support the findings.

The learned circuit judge in deciding the case commented orally upon the informality of this large transaction and the absence of any written transfer to the son. It is argued that these remarks indicate a belief by the circuit judge that the evidence on the part of the defendants was insufficient in law to support a gift. We cannot bring ourselves to the conviction that this contention is sound.

It is next argued that the court undoubtedly gave weight to Exhibit C and that this writing was incompetent. We all recognize that self-serving declarations, whether oral or written, not part of the *res gestæ,* are incompetent, and that declarations of a donor after a gift and in derogation of that gift are incompetent. But a majority of the court consider it unnecessary to pass upon the question: when the alleged acts and words of gift are so ambiguous that the transaction might be either a gift or a bailment, whether declarations of the alleged donor contained in an abortive attempt by him to make a will or codicil are competent as verbal acts and part of the *res gestæ.* It is considered that there is nothing in the record to show that the trial judge gave any weight to Exhibit C beyond the fact that the son, when confronted with that declaration of his father, made no claim that there had been a gift to the former. It is believed, therefore, that the case is governed by the rule that, where there is competent evidence sufficient to support a finding, this court will presume, in the absence of an affirmative showing to the contrary, that that finding rests upon the competent evidence solely.

The majority of the court, therefore, declines to commit the court on the question of competency of Exhibit C, although the writer considers it competent under the circum-

stances here shown.    We discover no error in excluding the
testimony of *Charles Rahr, Jr.,* relative to transactions or
communications personally had with his deceased father on
or about April 1, 1910, or in August, 1911.

Although the plaintiffs questioned witnesses in this action
with reference to other transactions or communications be-
tween the appellant and his father, deceased, no witness was
examined in their behalf concerning the communications of
April 1, 1910, or August, 1911.    Sec. 4069, Stats. 1913;
*Anderson v. Anderson,* 136 Wis. 328, 117 N. W. 801.    In a
different proceeding under sec. 3825, Stats. 1913, the defend-
ant *Charles* was examined at the instance of the executors
under oath.    On the trial of this action defendants offered in
evidence the testimony of *Charles* so given.    It was properly
excluded, we think, under the rule of *Maldaner v. Smith,* 102
Wis. 30, 78 N. W. 140.

*By the Court.*—Judgment affirmed.