## GREER *v.* GREER.

### Opinion delivered October 16, 1922.

1. TRUSTS—EVIDENCE TO ESTABLISH RESULTING TRUST.—A resulting trust in land may be established by parol evidence, but the evidence must be clear, positive and satisfactory.

2. TRUSTS—SUFFICIENCY OF EVIDENCE.—In a suit to declare a resulting trust in favor of children for realty taken in exchange for their deceased father's homestead, evidence *held* sufficient to establish the trust where title to the new property was taken in their mother's name without their consent.

Appeal from Conway Chancery Court; *W. E. Atkinson*, Chancellor; affirmed.

#### STATEMENT OF FACTS.

Eard Greer and Beulah Huett brought this suit in equity against Ted Greer, Jewel Rainbolt, Lafayette Greer, Nina Greer and Ed Rainbolt, to establish a resulting trust in their favor in certain property situated in the town of Morrilton, Arkansas, which is described in the complaint.

The defendants asserted title in themselves, and denied the trust.

The plaintiffs and defendants, except Ed Rainbolt, were the children and heirs at law of W. L. Greer, deceased. Ed Rainbolt is the husband of Jewel Rainbolt, one of the defendants. At the time of his death, W. L. Greer owned a farm in Conway County which constituted

his homestead. He died in 1908, leaving a will in which he devised his homestead in his widow, Lee R. Greer, for and during her natural life, and at her death to go in equal parts to his children, who are the parties to this action and his sole heirs at law.

By a subsequent clause of his will, the testator directed certain other property to be sold and divided among his children. He stated in his will that he had already made an advancement to his son, Eard Greer, in an amount of about $100 more than he had given his other children, and directed that this should be taken into consideration in distributing the proceeds of the property directed to be sold under his will. After his death his widow continued to reside on the homestead with her minor children.

In February, 1912, the widow desired to move to the town of Morrilton, and with the consent of her children exchanged the homestead for the house and lot in controversy in this case. The homestead comprised 120 acres and was worth at the time about $2,000 or $2,500. She exchanged the property for a house and lot in town owned by J. S. Nichols, which was of about the same value. On the 5th day of February, 1912, the widow, Lee R. Greer, Eard Greer, Beulah Huett and Lafayette Greer executed a deed conveying said homestead to J. S. Nichols. The deed recited a consideration of $1 and other good and valuable considerations. On the same day Nichols executed to Mrs. Lee R. Greer a deed to the town property involved in this suit. In 1914 a petition was filed in the chancery court for the removal of the disabilities of Nina Lee Greer and Vance Montague Greer, minors, to enable them to make a deed to their interest in said rural homestead. The petition states that Nina Lee Greer was sixteen years of age and that Vance Montague Greer was twenty years of age. The chancery court removed their disabilities for the purpose of conveying their interests in said homestead.

It was further decreed that their mother should hold the town lot with remainder over to said minors. The plaintiffs, Eard Greer and Beulah Huett, were not parties to the proceedings.

The proceedings for the removal of the disabilities of the minors was had in chancery court on the 18th day of May, 1914. On the same day Vance Montague Greer and Nina Greer and Esther Jewel Greer, now Jewel Rainbolt, executed a deed to J. S. Nichols conveying their undivided interest in said rural homestead of 120 acres. The consideration recited in the deed was $1 and other good and valuable considerations. Mrs. Lee Greer died in the latter part of the year 1915. Thus far the facts are undisputed.

The plaintiff introduced evidence tending to show that it was the intention of the parties that they should have the same interest in the town property as they had in the rural homestead.

On the other hand, the defendants introduced evidence tending to show that it was understood that their mother should have a life interest in the town property and at her death that the remainder should go to the minor children. This evidence will be stated in detail in the opinion.

The chancellor found the issues in favor of the plaintiffs, and decree was entered accordingly.

To reverse that decree the defendants have duly prosecuted an appeal to this court.

*J. Allen Eades*, for appellants.

An express trust cannot be proved by parol evidence. 103 Ark. 174; 45 Ark. 481.

The settlement was, in fact, an amicable family settlement and was binding on appellees. 98 Ark. 98. Amicable family settlements are to be encouraged. 15 Ark. 275; 41 Ark. 270; 102 Ark. 243; 64 Ark. 22.

An express trust must be established by proof that is clear, convincing and satisfactory. 79 Ark. 425; 71 Ark. 373; 75 Ark. 451; 3 Pom. Jur. sec. 1040.

*Strait & Strait,* for appellees.

Equity will decree a constructive or resulting trust on behalf of a person who furnishes the purchase money. 54 Ark. 499; 64 Ark. 155; 9 Ark. 518; 13 Ark. 187; 47 Ark. 470; 80 Ark. 379; 72 Ark. 456; 51 Ark. 351; 92 Ark. 55; 84 Ark. 160; 34 Ark. 212; 72 Ark. 456; 101 Ark. 451.

The decree of the chancellor was correct, and it should be affirmed.

HART, J., (after stating the facts). The chancellor found a resulting trust in favor of the plaintiffs in the town property in the same proportion as their interest was in the rural homestead. This was on the theory that it was the intention of the parties at the time the exchange of the real property was made that they all should have the same interest in the town property as they had formerly had in the rural homestead. In this connection it may be said that a resulting trust in land may be established by parol evidence, but the evidence must be clear, positive and satisfactory. *Spradling* v. *Spradling,* 101 Ark, 451, and *Harbour* v. *Harbour,* 103 Ark. 273.

Tested by this rule, we do not think that the finding on this point in favor of the plaintiffs is against the clear preponderance of the evidence.

Eard Greer and Beulah Huett are the principal witnesses for the plaintiffs, and Nina Lee Greer and Jewel Rainbolt are the principal witnesses for the defendants. The principal witnesses are all parties to the suit, and as such are vitally interested in the result.

The plaintiffs testify in clear and positive terms that they executed the deed conveying the rural homestead to Nichols because their mother wished to exchange it for the house and lot in Morrilton in order that she might move to town with her minor children. They further stated they did not intend to relinquish their remainder interest in the property; that they intended to have the same interest in the town property as they had held in the homestead in the country, and did not know to the contrary until sometime after their mother's death.

On the other hand, the two defendants last men-
tioned are equally positive that it was the intention of the
parties that the plaintiffs should have no interest what-
ever in the town property. The defendants gave as a
reason for this that their father had made certain ad-
vancements to the plaintiffs in his lifetime and that this
was done for the purpose of equalizing their respective in-
terests in their father's estate.

They also testified that the plaintiffs were present
when their disabilities were removed, and understood
that the chancery court in that proceeding decreed their
mother an estate for life in the town property with the
remainder over to the minors. Ed Rainbolt attempts to
corroborate their testimony in this respect.

We think that the testimony of the defendants is
wholly inconsistent with the other facts and circumstances
in the case. The chancery decree removing the disability
of the minors and establishing their interest in the town
property was not rendered until about two years after
their mother and the plaintiffs had executed their deed to
Nichols, to the rural homestead.

The chancery decree recites that the mother was
present and agreed that the town property should be de-
creed to her for her natural life, with the remainder to her
minor children. If the plaintiffs had been present and
had agreed to this proceeding, it is likely that their con-
sent also would have been recited in the decree and their
appearance entered to the proceeding just as in the case
of their mother. The fact that this was not done, and that
the chancery decree was made two years after the plain-
tiffs had executed their deed in the exchange of the lands,
are strong circumstances tending to show that the plain-
tiffs were not present when the chancery proceedings
were had, and did not agree that their interests in the
town property should be divested out of them. The
plaintiffs could not be bound by the chancery decree un-
less they were present and knew of its rendition.

Again, it is contended by the defendants that the deed was made for the purpose of equalizing the respective shares of the children in their father's estate. They claimed that their father had made certain advancements to the plaintiffs in his lifetime and that the plaintiffs had relinquished their claim in the homestead in order to compensate the defendants for the advancements that they had already received at the hands of their father. Their father's will, however, contradicts their testimony in this respect. He had other lands which he directed in his will to be sold and the proceeds to be divided among his children, taking into consideration the fact that he had already made a net advancement to Eard Greer, one of the plaintiffs. This showed that it was not necessary for the plaintiffs to relinquish their interest in the homestead in order to equalize the respective shares of the children in their father's estate.

Therefore, we think that the attending circumstances strongly corroborate the testimony of the plaintiffs, and that the evidence establishing a resulting trust in their favor is clear and satisfactory.

It follows that the decree must be affirmed.