WOOTON v. KEATON.

Opinion delivered May 25, 1925.

1.  GIFTS—WHEN TITLE PASSES.—The title to a gift *inter vivos* passes at once when the property is delivered to the donee or to some one else for his benefit.

2.  DOWER IN PERSONALTY—NOT VESTED RIGHT.—Although Crawford & Moses' Dig., § 3535, provides for dower in personalty, it is not a vested right in such property, and the Legislature may increase or diminish it or wholly take it away.

3.  DESCENT AND DISTRIBUTION—RIGHT OF DISPOSITION OF PERSONALTY. —The owner of personal property may dispose of it at will during his life as against the rights of his wife and children under Crawford & Moses' Dig., § 3471, relating to the distribution of such property of which he dies possessed.

4.  EVIDENCE—DECLARATIONS OF DONOR.—A donor's declarations, made after transfer of title, in derogation of such title, is inadmissible against the donee, being mere hearsay and not admissible as part of *res gestae* nor as declarations against present interest.

5.  EVIDENCE—DECLARATIONS OF DONOR.—To make the declarations of a donor admissible against a donee, they must have been made during the time the interest in the property was vested in such donor.

6.  GIFTS—DONEE'S TITLE.—Title to money given to defendant *held* not affected by her assertion that she earned it, and that it belonged to her on that account, although it might affect her credibility as a witness.

7.  GIFTS—EVIDENCE.—The fact that deceased collected interest on money which he had given to defendant with whom he was living *held* not to overcome positive evidence of the depositary of the money that deceased gave it to defendant.

8.  GIFTS—TITLE.—That the donee of money lived in an apparent state of concubinage with her donor did not affect her title to the money.

9.  APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— A chancellor's finding of fact will be upheld if not against the preponderance of the evidence.

10. TRUST—SUFFICIENCY OF PROOF.—Parol evidence to establish a resulting trust must be clear, positive and satisfactory.

Appeal from Garland Chancery Court; *J. P. Henderson*, Chancellor; affirmed.

STATEMENT OF FACTS.

Appellants brought this suit in equity against appellees to have certain real estate and personal property declared to belong to the estate of J. W. Fulton, deceased, and to establish their rights as widow and sole heirs-at-law of said decedent.

The suit was defended on the ground that the property belonged to Ella Keaton, one of the appellees. So far as is necessary to decide the issues raised by the appeal in this case, the facts may be briefly summarized as follows:

In September, 1874, William J. Fulton married Martha Estes, in Clark County, Arkansas. The chief occupation of William J. Fulton was in constructing roadbeds for railroads under contracts with the principal contractors. While engaged in that occupation he lived in various parts of Arkansas, Oklahoma, Texas, Louisiana, and Mississippi. Three children were born as the fruits of his marriage to Martha Estes. William J. Fulton died intestate in Garland County, Arkansas, in the month of December, 1920. At the time of his death he was known as J. W. Fulton. Several years after his marriage, J. W. Fulton sent his wife and three children to stay with some of his relatives in the State of Virginia, and he did not thereafter live with them. He continued, however, to make contributions to their support until all of his children were grown. Some time before he sent his wife and children to Virginia, Fulton formed an attachment for Ella Keaton, who had negro blood in her veins, and lived with her for thirty-six years and until his death. His widow and children, who are the appellants here, were plaintiffs in the chancery court, and Ella Keaton was the principal defendant. Henry Thane and the Desha Bank & Trust Company were also made defendants, on the ground that they had in their possession something over $29,000 of money which belonged to Fulton at the date of his death, and which was claimed by Ella Keaton.

On the part of the bank it was shown that neither Fulton nor Ella Keaton had any money deposited in said bank at the time Fulton died. Henry Thane admitted that he had in his possession something over $29,000, which he said belonged to Ella Keaton. He admitted that he had been paying the interest monthly, and had paid it to Fulton.

According to the testimony of Ella Keaton, she had lived with J. W. Fulton as she knew him for thirty-six years, and he had paid her wages during all of that time. She had dealt in real estate with her earnings, and had made the money which she had deposited with Henry Thane. She admitted that she had deposited it with him because Fulton had advised her to do so. For several years, during the latter part of his life, Fulton was afflicted with sores of a cancerous nature, and she not only cooked and kept house for him, but daily dressed his sores. She further testified that Fulton lost all of his property, and that she used the income from her property to support them both. Other facts will be stated or referred to in the opinion.

The chancellor found the issues in favor of the appellees, and it was decreed that the bill of appellants should be dismissed for want of equity. The case is here on appeal.

*Martin, Wooton & Martin* and *St. John & Gore,* for appellant.

*C. T. Cotham* and *Gibson Witt,* for appellee.

HART, J., (after stating the facts). It is fairly inferable from the facts as they appear in the record that appellants are the widow and children of J. W. Fulton, deceased, who died intestate in Garland County, Arkansas, in December, 1920, and that Fulton had not lived with them for nearly thirty-six years before his death. It also appears from the record that Ella Keaton lived with Fulton for thirty-six years before his death. At the time of Fulton's death, Henry Thane, who was the president of the Desha Bank & Trust Company, had in

his hands over $29,000, which both he and Ella Keaton testified belonged to her. They admitted that the inter- est was paid monthly to Fulton, but say that this was done because Ella Keaton lived with Fulton, and he had always acted as agent for her.

According to the testimony of Ella Keaton, she first earned some money by cooking for Fulton and the hands employed by him in railroad construction work. She invested the money earned by her in a farm, and sold it for a profit. She continued to invest in farm lands, and made additional money by farming and by selling her farms at a profit.

Evidence was adduced by appellants tending to show that the money in the hands of Henry Thane at the time of Fulton's death had been earned by Fulton, and belonged to him at the time it was deposited with Thane.

In this connection it may be stated that, so far as the record discloses, a part of this money had been earned by Ella Keaton and a part of it by Fulton him- self. Be that as it may, however, for the purposes of this decision we have assumed that the money deposited with Henry Thane once belonged to Fulton. Both the testi- mony of Henry Thane and Ella Keaton, however, show that, when the money was deposited with Thane, it was deposited with him as the money of Ella Keaton. The first question then which presents itself is whether or not this could be done and the marital rights of the widow and children of decedent be thereby divested of them. The money was deposited with Thane in 1908 and 1909, and Fulton died in 1920. Our statute provides that a widow shall be entitled, as part of her dower, absolutely and in her own right, to one-third part of the personal estate whereof the husband died seized or possessed. Crawford & Moses' Digest, § 3535.

Under our statute of descents and distributions, whenever any person shall die having title to any per- sonal or real estate not disposed of, and shall be intestate

as to such estate, it shall descend and be distributed, subject to the payment of his debts and the widow's dower, in the following manner; first to his children or their descendants in equal parts.    Crawford & Moses' Digest, § 3471.

In the case of *Hatcher* v. *Buford,* 60 Ark. 169, it was held that, under our dower statute, property conveyed by the husband by gift *causa mortis* is subject to the widow's right of dower.    The reason given was that, in the case of a gift *causa mortis,* the donor dies seized and possessed of the property so conveyed, and that, under our statute, the right of the widow to dower attaches before the estate by gift *causa mortis* vests in the donee.    In that case, however, it was expressly recognized that the rule was different as to a gift *inter vivos.*    The reason is that, in such case, the title passes at once when the property is delivered to the donee or some one else for his benefit.    The court expressly said that the owner of personal property has the right to dispose of it during his life as he pleases, and that the title passes when the gift is made.    For this reason the donee's rights are superior to those of the widow, because her right to dower does not become vested until the husband's death.    The court adopted the view that the question of fraud could not be predicated upon such a gift, and cited in support of its conclusion and reasoning on the question the cases of *Lines* v. *Lines,* 142 Pa. St. 149, and *Pringle* v. *Pringle,* 59 Pa. St., 281.    Mr. Justice Sharswood, who delivered the opinion in the case last cited, said that, at common law, a man who is *sui juris* and *compos mentis* may give away all his personal property, so as to become himself and leave his wife and children penniless, and cited in support of the holding Blackstone's Commentaries and Kent's Commentaries.

In this connection it may be stated that the text of both of these learned commentators sustains the proposition.    Of course the wife might prevent the disposition of it by asserting her marital rights by way of alimony,

where the husband had deserted or failed to support her. Since the wife's right of dower is not a vested right in property, it is upon the same footing with the expectancy of heirs before the death of the ancestor, and the Legislature may increase, diminish, or wholly take it away. *Randall* v. *Kreiger*, 23 Wall. (U. S.) 138; *Hatcher* v. *Buford*, 60 Ark. 169, and case note to 12 Ann. Cas. at p. 191.

The language of our statute of descents and distributions is that personal property not disposed of shall descend first to the children of the intestate. Hence, with greater reason, if the owner of personal property should make a gift *inter vivos,* the title would pass during his lifetime, and his children could not set aside the gift. If the Legislature can act in the premises at its pleasure, it is manifest that the owner of property can dispose of his personal property at his own will during his life in so far as the rights of his widow and children are concerned.

But it is insisted by counsel for appellants that the evidence shows that the money in the hands of Henry Thane belonged to J. W. Fulton. Both Henry Thane and Ella Keaton testified that the money was given to him as the property of Ella Keaton. Ella Keaton was present when the money at the various times was turned over to Thane. These witnesses were introduced by appellants; but counsel for appellants claim that they were both hostile witnesses, and insist that their evidence was contradicted by the declarations of J. W. Fulton to other parties. The declarations referred to were made by Fulton after the money had been deposited with Henry Thane as the money of Ella Keaton.

This court is committed to the doctrine that the declarations of one from whom a party obtains title to property, made after the transfer of title and in derogation of that title, is inadmissible in evidence against the latter. To make a declaration of one from whom a party obtains title to property admissible in evidence against the latter, it must have been made during the time an

interest in the property was vested in the person making the declaration. *Bispham* v. *Turner*, 83 Ark. 331; *Brown* v. *Brown*, 134 Ark. 380; and *Jefferson* v. *Souter*, 150 Ark. 55.

Statements made by the donor of real or personal property are not receivable in evidence as admissions against the donee. The reason is that the declarations of a donor in disparagement of the title made subsequent to the full execution of a deed or gift are mere hearsay. Thy are neither a part of the *res gestae* nor declarations against the present interest. See case-note to 1 A. L. R. at p. 1240. In the same case-note it is said that statements derogatory of title, made subsequent to a complete gift of personal property, are inadmissible as against the donee, and numerous cases are cited to support the rule. Among those sustaining the rule we cite the following: *Tierney* v. *Fitzpatrick*, 195 N. Y. 433, 88 N. E. 750; *Bennett* v. *Cook*, 28 S. C. 353, 6 S. E. 28; *Brock* v. *Brock*, 92 Va. 173, 23 S. E. 224; *First Nat. Bank* v. *Yoeman*, 17 Okla. 613, 90 Pac. 412; *Hicks* v. *Forrest*, 41 N. C. 528; *Hilton* v. *Rahr*, 161 Wis. 619, 155 N. W. 116: *Dixon* v. *Labry* (Ky.), 29 S. W. 21; *Echols* v. *Barrett*, 6 Ga. 443; *Cornett* v. *Fain*, 33 Ga. 219; *Francoeur* v. *Beatty*, 170 Cal. 740, 151 Pac. 123; and *Walden* v. *Purvis*, 73 Cal. 518, 15 Pac. 91.

In the latter case it was held that declarations made by a donor of personal property, after he had parted with the property, are inadmissible in evidence against the donee, either to prove fraud or any other fact in avoidance of the gift. In some of these cases it may be stated that the courts say that an exception to the general rule may be made in cases where the main evidence of the donee to support his title to the property are the declarations of the donor.

The evidence for appellees in the present case does not in any sense make this exception applicable, even if it could be said to be the law, and upon this point we express no opinion, for the evidence of the donee to sup-

port her title to the money is evidence of facts of which the witnesses had personal knowledge, and are not the declarations of the donor that he had given the money to the donee. In short, both Henry Thane and Ella Keaton testified in positive terms that the money in question was deposited with Henry Thane as her money.

It is insisted, however, that, inasmuch as Ella Keaton claimed that she had earned the money, it would be inconsistent with this theory to allow her to hold it as a gift from Fulton. This fact, however, could not affect her title to the money, but would only go to her credibility as a witness. As we have already seen, under the law she would be as much entitled to the money as a completed gift from Fulton during his lifetime as if she had earned the money herself. Even if her testimony should be wholly discredited, there remains the testimony of Henry Thane to support her title to the money. He is wholly disinterested in the matter, and simply holds the money as a depositary for its owner. He testified in positive language that the money was delivered to him as the property of Ella Keaton. There is nothing to contradict his testimony in this behalf, except the fact that Fulton collected the interest. We do not think this fact is sufficient to overcome his positive testimony that the money was deposited with him as the money of Ella Keaton.

It appears that Fulton became afflicted with sores of a cancerous nature and became entirely dependent upon Ella Keaton to take care of him and to support him for several years before his death. Of course this is no justification or excuse for the long continued state of concubinage between Fulton and Ella Keaton, which is inferable from the record; but this could not affect her legal rights in the premises. Their relationship prompted her to make him her agent for the collection of the interest on her money from Henry Thane. Therefore the finding of the chancellor in her favor on this point is not against the preponderance of the evidence, and, under the settled rules of this court, must be upheld on appeal.

It is next insisted that there is a resulting trust in favor of appellants to a piece of property conveyed to Ella Keaton by Jas. Housley in 1912. According to the testimony of Housley, Fulton made the trade for the property and agreed to pay him $4,000 for it. Fulton directed Housley to make the deed to Ella Keaton, and this was done. The sum of $4,000 was paid to Housley in the presence of Ella Keaton. She testified that the money belonged to her, and told how she obtained it by the sale of other property, which she had paid for by wages which she had received from Fulton before he became afflicted and before he lost his property.

Thus it will be seen that the undisputed evidence shows that the title to the property was placed in Ella Keaton at the time of its purchase by the express direction of Fulton, and there is nothing in the record which tends to show that he intended a resulting trust in his own favor. It is well settled that a resulting trust in land may be established by parol evidence, but the evidence must be clear, positive and satisfactory. *Greer* v. *Greer*, 155 Ark. 235, and cases cited.

The decision of the chancellor was correct, and the decree will therefore be affirmed.