C. M. VARNER, Administrator of W. S. Steel and J. H. Steel, deceased,
v. N. JOHNSTON, Administrator, etc., of Sarah Jamison, deceased.

*Wills — Probate — Construction of — Restoration of Destroyed
Will—Statute of Limitations—Reference.*

1. Where a testatrix provided for the sale of a slave and the distribution
of proceeds among her grandchildren when the youngest should
arrive at a certain age, the fact that such grandchild died before
attaining the designated age does not change the time at which
the sale and distribution should be made.

2. Where a will provided that at a certain time a slave "shall be put to
public sale and the proceeds equally divided between my surviv-
ing grandchildren, and in case any of my grandchildren shall
die and leave children, their children shall receive the portion
which would have been coming to them, provided they had lived
until the distribution" : *Held*, that the intention of the testatrix
was that the fund should be divided among her grandchildren
living at the time of the sale and the children of such as were
dead leaving children.

3. Where a will has been admitted to probate a party claiming property
disposed of by it to another cannot, in an action to recover the
same, be permitted to attack the will on the ground of the lack of
testamentary capacity of the testatrix, and evidence offered for
that purpose is properly excluded, under section 2150 of *The Code.*

4. Where one claims personal property as the distributee of an ancestor,
an action to recover the same can be maintained only by the admin-
istrator or executor of the deceased.

5. The limitation of five years, prescribed in section 67 of *The Code,* as
the time in which burnt records may be restored after destruction,
as provided in section 59 of *The Code,* applies to a proceeding
begun in 1886 to restore the record of a will destroyed in 1875,
notwithstanding the Act of 1893, chapter 295, which amends sec-
tion 67 by abolishing the limitation.

6. The statutory method of establishing the contents of a lost or de-
stroyed record, as prescribed in section 55 *et seq.* of *The Code,* does
not have the effect to exclude parol evidence to prove such con-
tents; therefore where, in an action to recover property alleged
to have been disposed of by such will, a referee found that the
will had been duly probated and the record of it destroyed and

that no copies were extant, but refused to admit testimony as to its contents, the Court below should, on the exception of the one offering such evidence, have remanded the case to the referee for his findings as to the contents.

7. W. S., in whom a legacy had vested, died without issue or next of kin, except his father, J. S., who died subsequently; V. was appointed administrator of both and in both capacities sued to recover the legacy: *Held*, that it is immaterial whether judgment was rendered in favor of V. as administrator of the father or the son, as, in either case, he is bound by the judgment.

8. Where there are conflicting claimants of a fund in the hands of an administrator and he resists the recovery by one of the claimants for whom judgment is finally given in an action to recover the fund, costs should not be awarded against the administrator personally, but should be paid out of the fund, unless the Court should adjudge that there has been mismanagement or bad faith in his defence to the action.

CIVIL ACTION by C. M. Varner, administrator of W. S. Steel and also of J. H. Steel, deceased, against N. Johnston administrator of Sarah Jamison, to recover the intestate's share of the proceeds of the sale of a slave sold under the provisions of the will of defendant's testatrix for distribution among her grandchildren. Isabella Gallamore also claimed the fund, and was made a party plaintiff on her motion. The cause was referred to J. C. Gibson, Esq., whose report was excepted to by plaintiff Gallamore and by the defendants, but was in all other respects confirmed by his Honor *McIver, J.*, at Spring Term, 1892, of CABARRUS Superior Court, and from the judgment overruling the exceptions and confirming the report the plaintiff Isabella Gallamore and the defendant Johnston, administrator, etc., appealed. The facts are sufficiently stated in the opinion of Associate Justice BURWELL.

*Messrs. Craige & Clement,* for plaintiffs.
*Mr. Paul B. Means,* for defendants.

BURWELL, J.: Sarah Jamison died in Cabarrus county in 1855. She named no executor of her will, which was admitted to probate in "common form" in October of that year. W. W. Rankin was duly appointed administrator *cum testamento annexo* of her estate, and died without having fully administered his trust. J. C. Cannon was then appointed administrator *de bonis non, c. t. a.,* and in 1864, as such administrator, he sold a slave called Green, on credit, and after 1865 he collected on account of said sale the net sum of $725.94, the proceeds of the sale of the slave. One-half of this fund was paid over to Jacob Blackwelder, who had married Elizabeth, a granddaughter of Sarah Jamison. The other half of this fund came into the hands of the defendant N. Johnston in September, 1879, who had been appointed to succeed J. C. Cannon in the administration of the estate of Sarah Jamison. He has, it seems, in his hands no money or other assets belonging to that estate, except what is the subject of controversy in this action. He admits that he received this fund from his predecessor in the administration of the estate of Sarah Jamison as the proceeds of the sale of a slave alleged to belong to her and bequeathed by her in her will.

The plaintiff C. M. Varner, administrator, insists that the facts heretofore stated are true, and contends that under the provisions of the will of Sarah Jamison the fund in the hands of the defendant administrator should be paid to him. He is the administrator of the estate of W. S. Steel, who died December 23, 1863, intestate and unmarried, and of James H. Steel, the father of W. S. Steel, who died in 1866. W. S. Steel was a son of Sarah Gallamore, one of the granddaughters of Sarah Jamison, and his mother died January 30, 1836.

We are brought, therefore, to the consideration of the will of Sarah Jamison, which, so far as concerns this con-

troversy, is as follows: "My negro boy, Green, is to remain with my daughter, Isabella Gallamore, until my youngest granddaughter, Frances Lydia Gallamore, arrives to eighteen years of age, when he is to be valued, and one of my grandchildren take him at the valuation and pay over to the other surviving grandchildren their distributive share, and, if none of them will take him at the valuation, then he shall be put to public sale, and the proceeds equally divided between my surviving grandchildren. In case any of my grandchildren shall die and leave living children, their children shall receive the portion which would have been coming to them, provided they had lived until the distribution had taken place."

Frances Lydia, the granddaughter named in this will, was born November 6, 1845, and died January 25, 1863, lacking nine months and twelve days of being eighteen years of age.

We think that the fact that she died before reaching the age of eighteen years could not have the effect of changing the period for which the slave was "to remain with" the daughter of the testatrix, or the time when he was to be sold and the proceeds distributed according to the provisions of the will. That was to be done when Frances would have arrived at the age of eighteen—November 6, 1863.

We think it very clear that the testatrix intended that the fund to arise from the sale of the slave, at the time designated by her, should be divided among her grandchildren *then* living and the children of any that had died and left children. The language used seems plainly to express this intention, and is susceptible of no other interpretation.

It is found as a fact that at this date for the sale and distribution (November 6, 1863) all the grandchildren were dead except Elizabeth who had married Jacob Black-

welder, and none of those deceased had left children, except Sarah Steel, the mother of plaintiff's intestate, William S. Steel, he being her only child.

This legacy, the proceeds of the sale of this slave, then became vested in these two persons, Mrs. Elizabeth Blackwelder and William S. Steel, each being entitled to one-half thereof.

It is conceded that Mrs. Blackwelder's share was paid to her representatives, and no claim is made for that by any one.

It follows, therefore, from the facts stated heretofore and the construction put upon the will of Sarah Jamison, that the administrator of William S. Steel is entitled to recover his share of this vested legacy, which is in the hands of the defendant administrator, unless there is some other claimant to the fund whose rights are superior to his, and who is asserting them against the defendant.

A claimant therefor appears in the person of Isabella Gallamore, the only child of Sarah Jamison, and a grand-daughter of one Joseph Rogers, who died about the year 1829. She has been allowed to make herself a party plaintiff to this action, and, building up her claim to this fund upon an alleged title to the slave (Green), she elects to follow this fund.

As we learn from an examination of the voluminous record, she asserts three distinct rights to the slave and to this fund which she insists stands in his stead as to her:

*First.* She alleged and offered to prove that Sarah Jamison died intestate; that at the time she executed the scrip, which had been admitted to probate as her will, her mother was "mentally incompetent" to make a will, and she says that as she is the sole next of kin of her mother the fund should be paid to her.

This claim falls to the ground unless two facts co-exist, viz., the intestacy of her mother and her ownership of the slave.

The referee properly excluded all evidence which she offered for the purpose of showing that the scrip, which had been probated as her mother's·will, was not a valid will. *The Code*, §§2150, 2158. Hence the intestacy of Sarah Jamison was not established, and this first assertion of right fails, though the plaintiff Varner admits the second fact, to-wit, the ownership by Mrs. Jamison of the slave. *Hampton* v. *Hardin*, 88 N. C., 592; *London* v. *Railroad*, *Ibid.*, 584.

*Second.* She claims the fund as sole next of kin of her father, Samuel Jamison, who died in 1830. She says, in support of this. second assertion of right, that the testimony shows that the mother of this slave belonged, *jure mariti*, to her father, and that by law the offspring of that slave (the slave Green) became at his birth also a part of her father's estate.

It seems sufficient to say in regard to this assertion of right that only the personal representative of Samuel Jamison can make it. If this fund, which is in all respects and as to all parties personal property, belongs to the estate of Samuel Jamison, only his administrator or his executor can recover it.

*Third.* She asserts a right to this fund as legatee of her maternal grandfather, under the terms of whose will, as she alleges, the slave (Green) became the property of Sarah Jamison for life only, and upon the death of her mother belonged to her absolutely.

In order to establish this claim the plaintiff Isabella Gallamore was required to show the will of Joseph Rogers. This she attempted to do under *The Code*, §59, for restoring burnt records, by a proceeding instituted before the Clerk of the Superior Court, as therein provided. Section 67 con-

tains a provision that "no petition to declare the contents of a deed or will shall be filed but within five years next after the loss or destruction thereof." The alleged destruction took place in 1875, while the proceeding to restore it was begun in 1886, and, of course, the proceeding was barred by the prescribed limitation of five years. The referee so ruled, and his Honor sustained the report in that as in other respects. In that we think there was no error.

An act of the General Assembly of 1893 has been brought to our attention by the counsel for the appellant, by which this section of *The Code* (67) is amended and this limitation is abolished. This can have no application to the matter before us. As the law was when the case was heard in the Superior Court, the proceeding was barred.

This proceeding was not, however, the only course open to the plaintiff Isabella Gallamore in her efforts to prove the contents of the will of Joseph Rogers. In *Mobley* v. *Watts,* 98 N. C., 284, it was decided that parol evidence is admissible to prove the contents of lost or destroyed records, and that the provision for a statutory method of restoring such records (*The Code,* §55 *et seq.*) does not have the effect to exclude such proof. On the hearing before the referee it was proved by the production of the proper record that the will had been duly probated; and it was also proved that it had been destroyed and that there were no copies of it. The referee found these facts, but failed to find what were the contents of that will. Evidence on that subject seems to have been submitted to him, and, upon the appellant's exception and motion, his Honor should have remanded the cause to him to find what were the contents of that will, for until they were ascertained no proper adjudication of the rights of the appellant, who claims under that will, can be made. (If the scrip had not been duly probated, or probated and recorded at all, its contents could not have been shown in this way).

VARNER *v.* JOHNSTON.

The referee should also find all such facts as may be proved before him in regard to the slaves disposed of by that will, if any, so that he may draw from the facts he finds the conclusion of law that the slave, Green, did or did not belong to the appellant upon the death of her mother, in 1855, as she alleges he did.

The claim of the appellant to the fund as legatee under the will of Joseph Rogers cannot be passed upon until these facts are found, and the cause is remanded in order that that may be done.

It should also be ascertained whether or not the plaintiff elected to take the legacies bequeathed to her by the will of Sarah Jamison, for it may be that by so doing she has deprived herself of the right now to assert that the testatrix did not own the slave, Green, and have power to dispose of him, as she assumed to do by her will.   Bigelow on Estoppel, (5 Ed.), 675; Story Eq. Jur., sec. 1084; *Sigmon* v. *Hawn*, 87 N. C., 450.

We see no force in the exception to the judgments having been granted to the plaintiff Varner as administrator of James H. Steel, the father, instead of William S. Steel, the child.   In both capacities he is a party to the judgment and bound thereby.

Costs should not be awarded against the defendant administrator personally, but should be paid out of the fund, unless the Court shall adjudge that there has been mismanagement or bad faith in his defence of the action.   *The Code*, §535.   This must be found in order to support a judgment against him personally for costs.   *State* v. *Roberts*, 106 N. C., 662.

The cause is remanded.   The costs of this appeal will be paid out of the fund in the hands of the administrator.

Error.                                           Remanded.