Florence McLaughlin *et al.* Plaintiffs in Error, *vs.* Frederick R. McLaughlin *et al.* Defendants in Error.

*Opinion filed October 26, 1909.*

1. Deeds—*when law presumes undue influence.* In the case of a deed from child to parent, client to attorney or ward to guardian the law presumes undue influence, and if the good faith of the transaction is challenged the grantee has the burden of establishing such good faith.

2. Same—*the law does not presume undue influence in case of deed from parent to child.* In the case of a deed from parent to child the law does not presume undue influence, and if any such presumption arises it must arise as a presumption of fact, based upon proof that the natural dominion of the parent has ceased and that his will has been overcome by that of the child, so that his act is not his own but the act of the child.

3. Same—*when the grantee is not required to prove good faith.* The grantee in a deed from father to son is not required to sustain the deed by proving the good faith of the transaction, unless the evidence shows that the grantor, by reason of old age or other condition, has become subject to the dominion of the grantee.

4. Same—*fact that grantor divides property unequally is not evidence of mental weakness.* A father may divide his property unequally among his children and may prefer one and cut off another, with or without reason; and the mere fact that he deeds the principal part of his property to his sons instead of dividing it equally among his sons and daughters is not evidence of mental weakness upon his part.

5. Same—*old age and feebleness not ground for setting aside deeds.* If a father has sufficient mental capacity to comprehend naturally the transactions in which he is engaged when he conveys the principal part of his land to his sons, the mere fact that he was advanced in years and enfeebled by sickness is not ground for setting aside the deeds.

Writ of Error to the Circuit Court of Scott county; the Hon. Owen P. Thompson, Judge, presiding.

Williams & Williams, and T. J. & J. O. Priest, for plaintiffs in error.

Bellatti, Barnes & Bellatti, (R. M. Riggs, of counsel,) for defendants in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by Florence McLaughlin and Mary Cumby, the daughters of Adam McLaughlin, deceased, in the circuit court of Scott county, against William L. McLaughlin, Daniel H. McLaughlin, John P. McLaughlin, Henry T. McLaughlin and Frederick R. McLaughlin, the sons of Adam McLaughlin, to set aside eight deeds made by Adam McLaughlin during his lifetime, viz., one deed bearing date March 14, 1891, from Adam McLaughlin to John P. McLaughlin, for the west half of the east half of the north-west quarter of section 13, township 13, north, range 13, west of the third principal meridian, Scott county, Illinois; one deed bearing date September 29, 1891, from Adam McLaughlin to Henry T. McLaughlin, for the west half of the south-east quarter of section 6, in township 13, north, range 12, west of the third principal meridian, Scott county, Illinois; one deed bearing date December 19, 1896, from Adam McLaughlin to Fred R. McLaughlin, for the north-east quarter of the south-west quarter of section 12, township 13, north, range 13, west of the third principal meridian, Scott county, Illinois; one deed bearing date January 21, 1897, from Adam McLaughlin to John P. McLaughlin, for the west half of the north-west quarter and the west half of the east half of the north-west quarter of section 13, in township 13, north, range 13, west of the third principal meridian, Scott county, Illinois; one deed bearing date January 29, 1897, from Adam McLaughlin to Fred R. McLaughlin, for the south one-half of the south-west quarter of section 12, in township 13, north, range 13, west of the third principal meridian, Scott county, Illinois; one deed bearing date January 29, 1897, from Adam McLaughlin to William L. McLaughlin, for the east half of the south-east quarter of section 6, in township 13, north, range 12, west of the third principal meridian, Scott county, Illinois; one deed bearing date February 28, 1907, from Adam McLaughlin to

John P. McLaughlin, for the west half of the north-west quarter of section 13, township 13, north, range 13, west of the third principal meridian, Scott county, Illinois, this deed being made to correct a mistake in the deed to John P. McLaughlin bearing date January 21, 1897; also one deed bearing date January 2, 1894, from Adam McLaughlin to Daniel H. McLaughlin, for the south-east quarter of section 28, in township 17, range 5, situated in Piatt county, Illinois. The lands conveyed by said deeds aggregate six hundred acres. Answers and replications were filed and the testimony was taken before a master, and reported to the court, and upon a hearing a decree was entered dismissing the bill for want of equity, and the complainants have sued out a writ of error from this court to review said decree.

Three grounds are relied upon for relief: First, that said deeds were without consideration; second, that at the time the said deeds were executed Adam McLaughlin was without sufficient mental capacity to execute the same; and third, that their execution was obtained through the undue influence of said William L. McLaughlin, Daniel H. McLaughlin, John P. McLaughlin, Henry T. McLaughlin and Frederick R. McLaughlin over Adam McLaughlin, their father.

The evidence found in this record fairly tends to establish that Adam McLaughlin, prior to the year 1891, was the owner of said lands and a considerable amount of personal property; that prior to the year 1878 he and his family lived upon and farmed said lands; that in that year he and his wife moved to Winchester, a village situated some eight or ten miles from said lands, where he purchased a small house and continued to reside with his wife for a year or two when he had some trouble with his wife, when they separated and Adam McLaughlin returned to the farm, his wife continuing to reside in Winchester. The two daughters, Florence McLaughlin and Mary Cumby, appear to have been in sympathy with their mother, and

Florence McLaughlin thereafter made her home with her mother, and the sons appear to have sympathized with their father and remained upon the farm, and after Adam McLaughlin returned to the farm he resided with one of the boys, who lived upon the home place. The differences between Mr. and Mrs. McLaughlin having been compromised by Adam McLaughlin paying to Mrs. McLaughlin a certain sum per annum for her maintenance and support, they remained separate and apart until the death of Mrs. McLaughlin, which occurred some two or three years prior to the death of Adam McLaughlin, which took place on April 26, 1907. After the return of Adam McLaughlin to the farm he gave to each of his sons eighty acres of land and made to them deeds therefor, and sold to John P. McLaughlin eighty acres of land, to Fred R. McLaughlin forty acres of land and to Daniel H. McLaughlin eighty acres of land, and at the time of his death he owned one hundred and fifty acres of farm land, the house and lot in Winchester where his wife lived until her death, and a considerable amount of personal property, and was indebted to the amount of $4000. At the time Adam McLaughlin gave to his sons said lands the deeds were not signed by his wife and he reserved the possession thereof during his life, or the grantees agreed to pay him during his natural life the fair rental value thereof.

While Adam McLaughlin was uneducated, he appears to have been a successful farmer and stock raiser and to have accumulated a large property. In the year 1891 he had a severe and protracted illness, and, while he substantially recovered, he was never as vigorous, physically or mentally, as he was before that illness. After that time, however, he carried on his farm, bought and sold stock, purchased and sold land, kept a bank account, and drew checks and executed promissory notes and carried on his business substantially as he had done before. A large number of witnesses were called and testified as to the mental

condition of Adam McLaughlin and there was a great conflict in their testimony. There is no evidence to sustain the claim of undue influence, and it is substantially admitted that the deeds were made by Adam McLaughlin to his sons in consideration of love and affection, as to eighty acres of land conveyed to each son. There is no force, therefore, in the contentions that the deeds were without consideration and were the result of undue influence. The only question we need consider, therefore, is, did Adam McLaughlin have sufficient mental capacity to make said deeds?

It appears that Adam McLaughlin was a nervous man; that at times his face, hands, arms and legs would twitch and jerk; that he would imagine at times that someone was attempting to break into his house at night; that he would call out in his sleep and pound upon the head of the bed with his fists, and was afraid to stay alone at night, and did not talk consecutively with his friends and neighbors, but would leave a subject, as one witness expressed it, and commence upon another subject before he had finished the first subject; and the witnesses who testified Adam McLaughlin was incompetent to make a deed based their opinions mainly upon some such peculiarity as his being afraid of thunder storms, or imagining that someone had attempted to break into his house, or the fact that he was unable to control his arms or legs when he was sitting or walking, but all of those witnesses admitted that with the assistance of his wife and sons he had carried on a large farm and transacted successfully the business of a farmer and stock raiser. On the other hand, some fifty witnesses, consisting of physicians, lawyers, ministers of the gospel, merchants, bankers, farmers and laborers, who had known Adam McLaughlin all his life, testified he was a successful farmer and stock raiser, and that he continued to transact business in a successful and rational manner up to the time of his death. From the evidence found in the record we are impressed with the fact that Adam McLaughlin was mentally

competent to make the deeds to his sons whose execution is challenged by the plaintiffs in error.

It is said in the argument of plaintiffs in error that a confidential relation existed between the defendants in error and Adam McLaughlin, and that the burden of proof was upon the defendants in error to sustain said deeds. Such is not the law of this State. Where a child executes a deed to the parent, a client to his attorney or a ward to his guardian, if the good faith of the transaction is challenged the law casts upon the parent, attorney or guardian the burden of establishing the good faith of the transaction. No such requirement exists, however, where a parent executes a deed to a child, unless the evidence establishes that the parent, by reason of old age or other infirmity, has become subject to the dominion of the child. In the case of a deed from a child to a parent the presumption of undue influence arises as a matter of law, but in case of a deed from a parent to a child no such presumption of law arises. But if such presumption arises it must arise as a presumption of fact, based upon the proof that the natural dominion of the parent over the child has ceased to exist, and that by reason of the weakness of the parent and the strength of the child the will of the parent has been overcome by the will of the child, and that the act of the parent was not his own act but the act of the child. *Burt* v. *Quisenberry,* 132 Ill. 385; *Oliphant* v. *Liversidge,* 142 id. 160; *Bishop* v. *Hilliard,* 227 id. 382; *Sears* v. *Vaughan,* 230 id. 572.

There is no rule of law which requires the parent to distribute his property equally among his children. He may prefer one and cut off another, with or without any reason, and the fact that Adam McLaughlin gave the principal part of his real estate to his sons was no evidence of mental weakness on his part; and the fact that Adam McLaughlin was advanced in years and perhaps somewhat enfeebled in mind by sickness, if he had sufficient mental capacity to

comprehend naturally the transactions in which he was engaged at the time he conveyed to his sons said lands, as we think the evidence amply showed he had, is no reason why the deeds to the sons should be set aside by a court of chancery. *Miller* v. *Craig,* 36 Ill. 109; *Myatt* v. *Walker,* 44 id. 485; *Lindsey* v. *Lindsey,* 50 id. 79; *Burt* v. *Quisenberry, supra.*

Finding no reversible error in this record the decree of the circuit court is affirmed.

*Decree affirmed.*