(No. 13389.—Decree affirmed.)

JOHN L. CHILDRESS *et al.* Appellants, *vs.* WALTER S. CHILDRESS *et al.* Appellees.

*Opinion filed June 22, 1921.*

1. DEEDS—*fact that grantor distributes his property unequally among his children is not evidence of mental weakness.* A grantor may make an unequal distribution of his property among his children, with or without reason, and the fact that he does so is not evidence of mental weakness.

2. SAME—*complainants who have called wife of one of defendants as a witness waive objection to her competency.* In a suit to set aside deeds, complainants who have called as a witness the wife of one of the defendants waive the question of her competency on account of the relationship, and cannot object when the defendants' counsel cross-examine the witness as to the matter about which the complainants examined her.

3. SAME—*a reservation of a life estate in grantor raises presumption that deeds were intended to take effect at once.* Where a grantor divides his real property among his children, a reservation of a life estate in the grantor in each of the deeds creates a presumption that the deeds were intended to take effect immediately as conveyances of future estates.

APPEAL from the Circuit Court of Coles county; the Hon. JOHN H. MARSHALL, Judge, presiding.

C. M. HEINLEIN, and T. N. COFER, for appellants.

ALBERT C. & BEN F. ANDERSON, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

James K. Childress on April 4, 1918, was the owner of 365 acres of land and a house and lot in the city of Oakland, all in Coles county. He had nine children: John L. Childress, Maggie L. Davis, Angeline Beasley and Marietta Butler, appellants, and Jennette Norwood, Albert D. Childress, Rebecca J. Clapp, Walter S. Childress and Isaac W. Childress, who are appellees, and all of whom were adults. On that day he directed Henry A. Neal, who had been his attorney for many years, to prepare a series of deeds to the different children conveying to them different parts of the land, and a deed to Nora B. Childress, a grand-daughter, and daughter of Isaac W. Childress, of the house and lot in Oakland. Drafts for the deeds were prepared by the attorney and were afterward executed by the grantor as written, with the exception that one deed conveyed 160 acres to Maggie L. Davis, Angeline Beasley, Jennette Norwood and Marietta Butler, and that deed was changed by the grantor so as to except 28 acres, and a deed dated June 4, 1918, was made to John L. Childress for the 28 acres. In each deed a life estate was reserved to the grantor. The deeds were taken by the notary public who took the acknowledgments and was cashier of a bank in Oakland and were all recorded and returned to the cashier, who deposited them in a box kept by the bank for the safe-keeping of papers of customers. James K. Childress died on July 28, 1919, being then eighty-three years of age. The cashier who had taken the acknowledgments as notary public and deposited the deeds in the box at the bank had died, and after the death of Childress the president of the bank delivered the deeds to the several grantees except John L. Childress. The deed made to Jennette Norwood, Maggie L. Davis, Angeline Beasley and Marietta Butler was delivered to Jennette Norwood.

The appellants, John L. Childress, Maggie L. Davis, Angeline Beasley and Marietta Butler, filed their bill in this case in the circuit court of Coles county against the other grantees in the deeds, who are appellees, praying the court to set aside the deeds and partition the premises therein described, and also a city property in Oakland acquired by James K. Childress after the deeds had been made and of which he had the legal title at his death, alleging as grounds for setting aside the deeds, mental incapacity of the grantor, undue influence exercised by Walter S. Childress and Rebecca J. Clapp, and a want of delivery of the deeds. The bill alleged that the division made by the deeds was unequal, and particularly that the defendants Walter S. Childress and Rebecca J. Clapp received much more in value than the other sons or daughters through the exercise of undue influence. The property conveyed to Isaac W. Childress was of the least value of any and very much less than that conveyed to any of the complainants, and he answered the bill, denying that James K. Childress was mentally incompetent or that any undue influence was used, and, on the contrary, averred that he was of sound mind and memory and understood what he had done and told said defendant that he had delivered the deeds. The answer alleged that the disposition of the property by James K. Childress was made for reasons that were satisfactory to him. Jennette Norwood, one of the grantees, with three of the complainants in the deed of the 132 acres, which the complainants alleged were not of equal value with the lands conveyed to Walter S. Childress and Rebecca J. Clapp, answered, denying that the grantor was mentally incompetent or that the division was unfair, and averred that the execution of the deeds was the result of a deliberate plan on the part of James K. Childress, and that they were delivered. Albert D. Childress answered that he received by the deed to him about one-third as much as each of the complainants and if the deeds were set aside he would be a gainer, but that

he knew his father to be competent and capable of making such disposition of his property as he saw fit; that no one could have influenced him in the matter, and he conveyed the land according to his own plan and of his own free will. Walter S. Childress and Rebecca J. Clapp denied the existence of any confidential relation or the exercise of any undue influence, or that James K. Childress was not capable of executing the deeds or that they were not delivered. A supplemental bill was filed alleging that the grand-daughter, Nora B. Childress, had been adjudged incompetent, and her mother, Rebecca Childress, had been appointed conservatrix, and Rebecca Childress appeared for her ward. Jennette Norwood, one of the grantees, with three of the complainants, of the 132 acres of land, filed her cross-bill for partition of that land, and the cross-bill was answered. On a hearing the chancellor entered a decree for the partition of the city property in Oakland acquired after the deeds were made, refused to cancel the deeds, dismissed the complainants' bill for want of equity except as to said city property, and ordered partition under the cross-bill of Jennette Norwood of the 132 acres. From that decree this appeal was prosecuted.

Counsel for appellants say they brought their case to this court to obtain an equal division of their father's estate in accordance with the Statute of Descent, so that every child will receive an exactly equal part according to the division made by the law. That was the object of the bill, and for the purpose of accomplishing that result the complainants alleged that James K. Childress was not capable of dividing his property as he chose; that the execution of the deeds was procured by undue influence of Walter S. Childress and Rebecca J. Clapp, and that the deeds were never delivered. The complainants had the burden of proving one or the other of the facts so alleged, which either deprived James K. Childress of the power to dispose of his property among his children, either equally or unequally, as

he desired, or rendered his division ineffective. There is no rule of law which requires a parent to distribute his property equally among his children. He may prefer one or more of his children and make an unequal distribution with or without reason, and the fact that he does so is not evidence of mental weakness on his part. (*Burt* v. *Quisenberry,* 132 Ill. 385; *McLaughlin* v. *McLaughlin,* 241 id. 366; *Dickerhoof* v. *Wood,* 267 id. 50.) It is only in case an owner does not dispose of his property that the law provides to whom it shall pass at his death. There was no evidence fairly tending to prove that James K. Childress was mentally incompetent. .He was eighty-two years of age and was in the usual mental and physical condition of persons of advanced years, but the evidence of a number of witnesses who had known him for many years and were well qualified by business transactions and otherwise to judge of his mental condition was that he was of sound mind, knew his property, understood and transacted his business, and that his mind was clear and he was capable of making a division of his property.

The bill charged that the execution of the deeds was procured by undue influence of Walter S. Childress and Rebecca J. Clapp, and to sustain the charge it was proved that Walter was authorized to sign checks for his father, and that he signed checks for small amounts of $5 or $10 to obtain money at the bank when his father was ill; that the father had given up his farm about three years before his death and moved to the city of Oakland; that Walter assisted him in looking after his affairs, hauled grain to warehouses and attended to the delivery of grain and settled for it as agent for his father. There was nothing in all this to prove the existence of a confidential relation, and the evidence was clear that no influence was exercised to procure the execution of the deeds, but that James K. Childress had contemplated and determined upon the division which he made long before it was made and had de-

clared his intention to various persons. It is urged as evidence of undue influence that Walter S. Childress received the home farm of 80 acres while his crippled brother, Isaac, got 20 acres of poor land; that Walter got four times as much as his brother Albert D. and two and one-half times as much as his sister Rebecca J. Clapp, or the sisters, and twice as much as complainant John L. Childress. As already stated, Isaac and Albert D. Childress and Rebecca J. Clapp, as well as Jennette Norwood, answered, denying every fact alleged in the bill as a ground for setting aside the deeds, and Jennette Norwood was a tenant in common with three of the complainants by the deed of the 132 acres.

The complainants called Rebecca Childress, wife of Isaac Childress, as a witness and examined her as to the occasion when the deeds were acknowledged at her home, where James K. Childress lived from January 17, 1918, to May 22, 1919, and she testified that Childress, when he came back from Charleston, told her he had his deeds fixed; that he told her before that who the deeds were to and had finally decided in his mind what to do, and told her how much he had given each party and that he had given Walter the home place. On cross-examination she said that he told her the evening before he went to Charleston that he had settled on what he was going to do and wanted her to call Walter, who went there with him, and that he was going down-town to have the deeds fixed up. She testified that the first day he signed five of the deeds, and a day or two afterwards the notary public came back and Childress had one of the deeds changed and sat down and looked over it and the deed to John L. and signed them; that the notary public said to him, "Uncle Jimmie, do you know you can't have nothing more to do with these deeds?" and that Childress replied that he knew it, and the notary public said he would go right away and have them recorded. The complainants by calling this witness waived the question of her competency on account of her relation to Isaac as his

wife, and their objection to the cross-examination as to what occurred when the deeds were acknowledged, about which the complainants examined her, was properly overruled. Isaac Childress, who was also called as a witness, said he knew all about how the matter was arranged long before his father's death.

The notary public, who was cashier of the bank, had died, and on the question of the delivery of the deeds the evidence, in addition to the testimony of Rebecca Childress, was that he took the deeds, in company with Walter, to the recorder's office and had them recorded, with a notation to send them to him at the bank, and that they were placed in the box kept by the bank for the safe-keeping of papers. The grantor had assented to the statement of the notary when the deeds were acknowledged that he could have nothing more to do with them, and there was no evidence that he reserved any control whatever over the deeds after they were acknowledged and taken by the notary public to be recorded. A life estate in each piece of property was reserved to the grantor, and such a reservation created a presumption that the deeds were intended to take effect immediately as a conveyance of a future estate, for the reason that if the grantor retained control of the deeds there would be no reason for such a reservation. (*Baker* v. *Hall,* 214 Ill. 364; *Riegel* v. *Riegel,* 243 id. 626; *Prince* v. *Prince,* 258 id. 304; *Buck* v. *Garber,* 261 id. 378.) Neither of the charges made by the bill was proved, but the preponderance was very clearly in favor of the defendants and against the complainants.

For lack of any substantial proof of either one of the charges made in the bill a decree dismissing it for want of equity except as to the city property in Oakland and granting relief on the cross-bill of Jennette Norwood was in accordance with the law, and the decree is affirmed.

*Decree affirmed.*