ALTFATHER v. BLOOM.

1. Homesteads — Equity — Deeds —Cancellation—Parties—Estoppel.

In a suit by a son to set aside a deed of a house and lot by his father to his house-keeper, who in turn conveyed to defendants, on the ground that the earnings of himself and sister were used to help pay for same, that it was a homestead, and that his father could not convey same without consent of his wife who was insane, where it appears that plaintiff and his sister had knowledge of said conveyance, that the wife is not a party seeking relief, and that the purchasers of the property acted in good faith and paid full value therefor, plaintiff has no standing in a court of equity.

2. Cancellation of Instruments—Deeds—Parties.

Where the grantee in a deed to a lot claimed by plaintiff to have been deeded by him to the grantor as security merely was not a party to the suit to set said deed aside, his interest in said lot cannot be adjudicated.

3. Appeal and Error — Insurance — Beneficial Associations — Right to Proceeds of Policy—Evidence—Statutes—Assumption.

Where neither the policy issued by a fraternal insurance company nor the by-laws of the company appear in the record, and the court may not assume that it was issued pursuant to the provisions of the statute relating thereto (2 Comp. Laws 1915, § 9393), the Supreme Court is unable, on the record, to make a decree involving the rights which have accrued thereunder.

4. Estates of Decedents—Accounting.

Money belonging to the estate of a deceased person is subject to the provisions of her will, and therefore plaintiff, as an individual, is not entitled to an accounting therefor of the person in whose hands it is held.

Appeal from Wayne; Mandell (Henry A.), J. Submitted April 12, 1922. (Docket No. 58.) Decided June 5, 1922.

On rights of child in parent's homestead, generally, see note in 56 L. R. A. 33.

Bill by Frank Altfather against Augusta Bloom and others for an accounting and to set aside a deed. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Charles C. Stewart* and *W. C. Gottman,* for plaintiff.

SHARPE, J.  The plaintiff is the son of Adam Altfather and Augusta Altfather.  The father died on February 14, 1918.  The mother was committed to the Wayne county insane asylum at Eloise on December 6, 1897.  She was afterwards transferred to the Michigan farm colony for epileptics at Wahjamega.  Soon after such commitment, Pauline Altfather, a cousin of Adam, came to live at his home and thereafter was apparently recognized and treated as his wife.  The plaintiff and his two sisters, Anna and Helena, are children of Adam and Augusta.  They were minors at the time Pauline came to the home.  They resided there until their marriage.

It is plaintiff's claim that his father was in poor health and that he and his sisters began to work for others at an early age; that their earnings were turned over to Pauline, who handled all moneys and provided for the home and its inmates.  In his testimony he speaks of Pauline as his "stepmother."  In 1904 a house and lot on 31st street in Detroit was purchased under contract from William J. Gray, trustee, the father being named as vendee therein.  He and Pauline resided there until his death.  In April, 1908, Adam borrowed $700 from Dr. Charles Gottman. With this money the land contract was paid up and the deed taken in Dr. Gottman's name as security for the loan.  It is plaintiff's claim that his earnings and those of his sister Anna were used to repay this loan. On May 29, 1911, Dr. Gottman conveyed the property to Adam and Pauline, "to be held as joint tenants and

not as tenants in common." On November 1, 1913, Adam executed a quit-claim deed of the premises to Pauline. On November 6, 1919, Pauline conveyed the property to the defendants Michael Novack and Mary Novack, his wife, who immediately entered into possession thereof. While the consideration expressed in this deed is one dollar, it is their claim that they paid $3,500 therefor. The bill alleges that Pauline was induced to sign this deed by the defendant Augusta Bloom. The bill alleges that after Adam's death the sisters of plaintiff were about "to take proceedings to secure their rights in the said estate" and that plaintiff at the request of Pauline induced them to refrain from doing so, on her promise to make a will devising and bequeathing all her property to him and on his promise to divide it equally among the three of them. On February 28, 1918, fourteen days after Adam's death, Pauline executed a will, apparently pursuant to this agreement, whereby she devised and bequeathed all her estate to the plaintiff, subject to a bequest of five dollars to each of his sisters. After his father's death in 1918, plaintiff continued to reside in the home with Pauline until August 30, 1919, when he married. He and his wife remained there about a month and then took rooms out Woodward avenue nearer to his work at the Ford plant. Prior to this, and in 1916, plaintiff purchased a lot in the Taylor subdivision in Detroit, paying $650 therefor. Being desirous of purchasing an automobile, in September of that year he borrowed $250 of Pauline and deeded this lot to her as security for such loan. Plaintiff claims to have paid back this loan except $50 before he left the home in 1919. About 20 years before her death, Pauline took out a fraternal policy of insurance in which the plaintiff was named as a beneficiary. It provided for a death benefit of $500. Plaintiff claims to have paid the assessments on this

policy for many years. The defendant Augusta Bloom lived near the Altfather home. It is her claim that she rendered considerable service to Pauline and in the home and that after plaintiff left, and in November, 1919, Pauline asked and was granted permission to live with her; that Pauline was then ill, had fainting spells, and needed attention; that she offered to and did turn over to Mrs. Bloom the fraternal insurance certificate, the proceeds to be used in paying the expenses of Pauline's last illness and burial. These amounted to $424.40, some of which had been paid. Pauline died on January 25, 1920. On January 10th of that year, she conveyed the lot which had been deeded by plaintiff to her to Mrs. Bloom. It is the claim of Mrs. Bloom that this conveyance was made in consideration of the service she had rendered Pauline and her promise to "take care of her grave" so long as she lived. This conveyance was subject to a contract for the sale of the lot executed by Pauline in October, 1919, to Charles Sternberger. The consideration named was $1,200. Three hundred and ten dollars had been paid prior to the death of Pauline and after her death he paid Mrs. Bloom $500 in cash and conveyed to her his equity in another lot and received a deed therefor.

We have stated the claims of the parties as disclosed by the bill of complaint and the testimony submitted at the hearing. The relief sought is:

(1) An accounting by Augusta Bloom of all money and property of Pauline that has come into her hands, "and requiring her to surrender up the same to this plaintiff."

(2) An injunction restraining her from claiming or receiving the death benefit under the fraternal certificate "until the true ownership of the same shall be judicially determined by this court."

(3) The setting aside of the deed of the home to the Novacks and "that same may be decreed to be the

property of this plaintiff * * * in trust for himself and his two sisters" and the deed to Mrs. Bloom of the other lot and that it be decreed to be the property of plaintiff.

1. We consider these claims in the inverse order to that stated. The trial court found:

"I have heard no attack made upon Novack's title as being fraudulently secured. No one has even intimated that he was not an innocent purchaser for value."

It is plaintiff's claim that when the father, Adam, was named as vendee in the land contract executed by Mr. Gray and the family moved therein the premises became a homestead and subject to the law applicable thereto; that as the family continued to reside thereon, the subsequent conveyances, in none of which Augusta Altfather, the wife of Adam, joined, were ineffectual to transfer the property and void. He relies on *McKee* v. *Wilcox*, 11 Mich. 358 (83 Am. Dec. 743) ; *H. Stern, Jr., & Bros. Co.* v. *Wing*, 135 Mich. 331, and *Allen* v. *Crane*, 152 Mich. 380 (16 L. R. A. [N. S.] 947), to support this claim. The widow of Adam is not here asking for relief against these transfers. The plaintiff and his sisters had knowledge of them when made. Proceedings to set them aside were contemplated by them soon after the father's death in 1918. Reliance was placed on the promise of Pauline to protect plaintiff's rights in a will which she promised to and did make. Plaintiff knew that Pauline was regarded as Adam's wife. He also knew that in the deed from Adam to Pauline, executed in 1913, he was described as her husband. It would be a grave injustice to now permit him to attack the conveyance to the Novacks, for which they apparently have paid full value, for the reason stated. The record of conveyances showed a perfect title in Pauline at the time the deed was made and the Novacks pur-

chased in reliance thereon. We think plaintiff has no standing in a court of equity to attack the Novack conveyance.

2. Mr. Sternberger is not a party to this suit and his interest in the lot deeded to him by Mrs. Bloom cannot be adjudicated.

3. It appears that Adam was named as the beneficiary in the fraternal insurance policy when first issued. On December 28, 1918, it was surrendered and a new one issued in which plaintiff was named as beneficiary. On November 18, 1919, this policy was surrendered and a new one issued to Augusta Bloom. Neither the policy nor the by-laws of the company appear in the record. The grand secretary testified:

"Under the by-laws of our organization, the person is permitted to change the beneficiary at will any time they shall so desire."

Plaintiff claims that blood relatives only could be named as beneficiaries unless it appeared that the member had no such relative (2 Comp. Laws 1915, § 9393). On this record we feel unable to determine the merits of the claim made by plaintiff. We have not the policy before us and cannot assume, as does plaintiff's counsel in his argument, that it was issued pursuant to the provisions of this statute. It would appear that its purpose was to provide for the expenses of the last illness and burial of the member. The expenses thereof almost equal the amount payable under the policy. We feel unable on this record to make any decree involving the rights which have accrued thereunder.

4. Plaintiff as an individual is not entitled to an accounting on the part of Mrs. Bloom of any moneys in her hands belonging to Pauline at the time of her death. Such moneys would clearly belong to Pauline's estate and be subject to the provisions of the will made by her, which has been duly admitted to pro-

bate. The record does not disclose what, if any, further proceedings have been taken to administer the estate.

We agree with the trial court that the record affords no ground for granting equitable relief to plaintiff. The decree dismissing the bill of complaint is affirmed. The defendants not having filed a brief in this court, no costs are allowed.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.