A. F. HOLT, JR., v. NERUS C. HOLT, MRS. GULIE HOLT, WIDOW OF CLIFTON G. HOLT; RUTH ARLINE HOLT, UNMARRIED; NORWOOD GRAHAM HOLT, AND MRS. GULIE HOLT, ADMINISTRATRIX OF CLIFTON G. HOLT,

and

WILLIAM P. HOLT v. NERUS C. HOLT, MRS. GULIE HOLT, WIDOW OF CLIFTON G. HOLT; RUTH ARLINE HOLT, UNMARRIED; NORWOOD GRAHAM HOLT, AND MRS. GULIE HOLT, ADMINISTRATRIX OF CLIFTON G. HOLT.

(Filed 18 October, 1950.)

**1. Conspiracy § 1—**

To create civil liability for conspiracy there must be a tort committed by one or more of the conspirators pursuant to the common scheme and in furtherance of the common object.

**2. Descent and Distribution § 3b—**

A child possesses no interest whatever in the property of his parent during the lifetime of the latter, and therefore has no ground to attack any conveyance made by the parent for want of consideration or as being in deprivation of his right of inheritance, since the right to inherit arises only on the parent's death and entitles the child to take as heir or distributee only the property owned by the parent at death which the parent does not dispose of by testamentary provision.

**3. Cancellation and Rescission of Instruments § 8—**

The right to attack a conveyance on the ground that its execution was procured by fraud or undue influence rests in the grantor and, upon his death with the cause of action still extant, in his heirs in case of intestacy and in his devisees in case the grantor leaves a will or, if the property be personalty, in his personal representative or, if the personal representative refuses to sue, in his legatees or distributees.

**4. Same—**

Where heirs at law, seeking to set aside conveyances executed by their ancestor on the ground of fraud and undue influence, introduce in evidence a paper writing probated in common form as the last will and testament of their ancestor, which is sufficient in form to vest in the grantees in the conveyances attacked all the interest of the ancestor, *held* compulsory nonsuit is proper, since plaintiffs may not collaterally attack the paper writing probated in common form, and the will precludes any interest in plaintiffs entitling them to maintain the action as heirs or next of kin of the grantor.

**5. Wills § 16—**

The probate of a paper writing in common form conclusively establishes it as the valid will of the decedent until it is declared void by a competent tribunal on an issue of *devisavit vel non* in a caveat proceeding. G.S. 31-19.

APPEAL by plaintiffs from *Burney, J.,* at the April Term, 1950, of JOHNSTON.

Civil actions, consolidated for trial and heard together, in which plaintiffs, as heirs and next of kin of a decedent, seek to recover damages of defendants for allegedly inducing decedent by fraud or undue influence to convey and will his property to them pursuant to a conspiracy on the part of the defendants and another to defraud plaintiffs of their rights of inheritance.

The plaintiffs undertook to sustain their allegations by the evidence summarized below.

1. A. F. Holt, Sr., and his four sons, Clifton G. Holt, Nerus C. Holt, William P. Holt, and A. F. Holt, Jr., resided in Johnston County, North Carolina, where A. F. Holt, Sr., owned a substantial landed estate, and conducted a merchandising business known as A. F. Holt and Sons in partnership with his sons, Clifton G. Holt and Nerus C. Holt.

2. Upon the death of his wife on 4 September, 1935, A. F. Holt, Sr., removed to the home of his son, Nerus C. Holt, where he spent the remainder of his days. Clifton G. Holt and Nerus C. Holt had virtually complete management of the mercantile business known as A. F. Holt and Sons subsequent to 1934.

3. On 23 October, 1936, and 3 December, 1937, A. F. Holt, Sr., executed in due form of law certain conveyances, which were forthwith registered in the office of the Register of Deeds of Johnston County, transferring all of his real and personal property, except that specified in the next sentence, to his sons, Clifton G. Holt and Nerus C. Holt. At about the same time, A. F. Holt, Sr., gave his son, William P. Holt, various sums of money totaling $22,112.14, and conveyed to his son A. F. Holt, Jr., by way of gift, several parcels of land worth about $15,000.00.

4. The real and personal property transferred to Clifton G. Holt and Nerus C. Holt by the conveyances of 23 October, 1936, and 3 December, 1937, was worth $185,000.00, and Clifton G. Holt and Nerus C. Holt paid A. F. Holt, Sr., nothing therefor. A. F. Holt, Sr., did not exercise dominion over the property subsequent to 3 December, 1937.

5. On 3 December, 1937, A. F. Holt, Sr., signed the paper writing afterwards probated as his last will before attesting witnesses in the law office of Abell and Shepard in Smithfield, North Carolina. His son, Clifton G. Holt, was present on that occasion.

6. Clifton G. Holt and Nerus C. Holt operated the mercantile business known as A. F. Holt and Sons until 1942, when Clifton G. Holt died

intestate survived by his widow, Mrs. Gulie Holt, and two children, Ruth Arline Holt and Norwood Graham Holt. Thereupon the realty described in the conveyances of 23 October, 1936, and 3 December, 1937, was "divided between Clifton G. Holt's heirs and Nerus C. Holt," and Nerus C. Holt, as surviving partner, bought the "one-half interest" of the deceased partner, Clifton G. Holt, in the mercantile business known as A. F. Holt and Sons.

7. Except for some sickness in 1934, A. F. Holt, Sr., "was strong mentally and physically for a man of his age until a year or two before he died." He "was a man of firm convictions."

8. A. F. Holt, Sr., died on or about 1 October, 1947, aged 85 years and 5 months.

9. Soon thereafter, the Clerk of the Superior Court of Johnston County admitted the paper writing mentioned in paragraph 5 of this statement to probate in common form as the last will of A. F. Holt, Sr. Such paper writing contained the following relevant items:

"Second: I have heretofore divided my property among my children as I considered just and fair and my sons W. P. Holt and A. F. Holt, Jr. have been duly advanced and should have no part of my estate.

"Third: I give, devise, and bequeath to my sons C. G. Holt and N. C. Holt, share and share alike, all the residue of my estate, of every kind and character, both real and personal, in fee simple absolute forever. If the said C. G. Holt, or the said N. C. Holt, predecease me, then it is my will and desire that one-half of my entire estate shall go to the heirs-at-law of such deceased child.

"Fourth: I hereby constitute and appoint my said sons C. G. Holt and N. C. Holt, or the survivor of either of them, my lawful executors to all intents and purposes, to execute this my last will and testament according to the true intent and meaning of the same and every part and clause thereof, hereby revoking and declaring utterly void all other wills and testaments by me heretofore made."

10. The plaintiffs had no notice of the existence of the paper writing mentioned in paragraphs 5 and 9 of this statement until some days subsequent to its admission to probate, and the plaintiff, A. F. Holt, Jr., did not learn of the conveyances of 3 December, 1937, during his father's lifetime.

11. The actions were commenced on 13 September, 1948.

The trial court dismissed the actions upon compulsory nonsuits at the close of the evidence for the plaintiffs, and the plaintiffs appealed, assigning these rulings as error.

*Wellons, Martin & Wellons, Levinson & Batton,* and *McLean & Stacy for plaintiffs, appellants.*

*Abell, Shepard & Wood for defendants, appellees.*

ERVIN, J. The answers deny the material allegations of the complaints, plead various statutes of limitation, and assert a want of capacity in plaintiffs to prosecute the suits. In consequence, the establishment of three distinct propositions is indispensable to the causes of action alleged by plaintiffs. These are: (1) That the decedent, A. F. Holt, Sr., was induced to execute the conveyances in controversy by fraud or undue influence of the defendants and their alleged co-conspirator, Clifton G. Holt; (2) that the cause of action arising out of this wrong existed in A. F. Holt, Sr., at the time of his death; and (3) that such cause of action thereupon passed to the plaintiffs in their capacities as heirs and next of kin of A. F. Holt, Sr.

The soundness of this observation becomes manifest when due heed is paid to relevant things. To create civil liability for conspiracy, a wrongful act resulting in injury to another must be done by one or more of the conspirators pursuant to the common scheme and in furtherance of the common object. The gravamen of the action is the resultant wrong, and not the conspiracy itself. Ordinarily the conspiracy is important only because of its bearing upon rules of evidence, or the persons liable. 11 Am. Jur., Conspiracy, section 45.

In the last analysis, the wrong charged in the instant cases is that of procuring property from the decedent, A. F. Holt, Sr., by fraud or undue influence. As we shall see, this was a wrong against the decedent, and not a wrong against the plaintiffs. Hence the plaintiffs are asserting alleged rights which are essentially derivatives from their ancestor. The significance of this fact must not be obscured in any degree by the allegations of the complaints that the alleged conspirators procured the conveyances from A. F. Holt, Sr., to deprive the plaintiffs of their rights of inheritance as prospective heirs and distributees of their then living ancestor.

A child possesses no interest whatever in the property of a living parent. He has a mere intangible hope of succession. *Allen v. Allen,* 213 N.C. 264, 195 S.E. 801. His right to inherit the property of his parent does not even exist during the lifetime of the latter. *Whitley v. Arenson,* 219 N.C. 121, 12 S.E. 2d 906; *Bemis v. Waters,* 170 S.C. 432, 170 S.E. 475. Such right arises on the parent's death, and entitles the child to take as heir or distributee nothing except the undevised property left by the deceased parent. *Chinnis v. Cobb,* 210 N.C. 104, 185 S.E. 638; *Gosney v. McCullers,* 202 N.C. 326, 162 S.E. 746.

In so far as his children are concerned, a parent has an absolute right to dispose of his property by gift or otherwise as he pleases. He may make an unequal distribution of his property among his children with or without reason. These things being true, a child has no standing at law or in equity either before or after the death of his parent to attack a

conveyance by the parent as being without consideration, or in depriva-.tion of his right of inheritance. *Wootton v. Keaton,* 168 Ark. 981, 272 S.W. 869; *Ehrlich v. Tritt,* 316 Ill. 221, 147 N.E. 40; *Childress v. Childress,* 298 Ill. 185, 131 N.E. 586; *Rhodes v. Meredith,* 260 Ill. 138, 102 N.E. 1063, Ann. Cas. 1914D, 416; *McLaughlin v. McLaughlin,* 241 Ill. 366, 89 N.E. 645; *Jones v. Jones,* 213 Ill. 228, 72 N.E. 695; *Thorne v. Cosand,* 160 Ind. 566, 67 N.E. 257; *Lefebure v. Lefebure,* 143 Iowa, 293, 121 N.W. 1025; *Clester v. Clester,* 90 Kan. 638, 135 P. 996; *Doty v. Dickey,* 29 Ky. Law Rep. 900, 96 S.W. 544; *Ross v. Davis,* 345 Mo. 362, 133 S.W. 2d 363, 125 A.L.R. 1111; *Brashears v. State ex rel. Oklahoma Public Welfare Commission,* 194 Okla. 66, 156 P. 2d 101; *Mandel v. Bron,* 270 Pa. 566, 113 A. 834; *Hanes v. Hanes* (Tex. Com. App.), 239 S.W. 190, overruling motion for rehearing 234 S.W. 1078; *In re Eckert's Estate,* 14 Wash. 2d 477, 128 P. 2d 656; *In re Peterson's Estate,* 12 Wash. 2d 685, 123 P. 2d 733; *Roy v. Roy,* 113 Wash. 609, 194 P. 590; *Schumacher v. Draego,* 137 Wis. 618, 119 N.W. 305.

When a person is induced by fraud or undue influence to make a conveyance of his property, a cause of action arises in his favor, entitling him, at his election, either to sue to have the conveyance set aside, or to sue to recover the damages for the pecuniary injury inflicted upon him by the wrong. *Van Gilder v. Bullen,* 159 N.C. 291, 74 S.E. 1059; *Modlin v. Railroad,* 145 N.C. 218, 58 S.E. 1075. But no cause of action arises in such case in favor of the child of the person making the conveyance for the very simple reason that the child has no interest in the property conveyed and consequently suffers no legal wrong as a result of the conveyance. *Carter v. McNeal,* 86 Ark. 150, 110 S.W. 222; *Moss v. Edwards,* 146 Ga. 686, 92 S.E. 213; *Pidcock v. Reid,* 145 Ga. 103, 88 S.E. 564; *Huffman v. Beamer,* 191 Iowa 893, 179 N.W. 543; *Seager v. Thulens,* 182 App. Div. 317, 170 N.Y.S. 482; *Dodson v. Kuykendall* (Tex. Civ. App.), 127 S.W. 2d 348.

The person making the conveyance may put an end to his cause of action during his lifetime by reducing it to judgment, or by ratifying the conveyance after the fraud has been discovered or the undue influence has ceased to operate. 26 C.J.S., Deeds, section 67. Besides, the cause of action may become barred by an applicable statute of limitation. G.S. 1-52, subsection 9; *Little v. Bank,* 187 N.C. 1, 121 S.E. 185; *Muse v. Hathaway,* 193 N.C. 227, 136 S.E. 633. But if the cause of action still exists in the person making the conveyance at the time of his death, it passes to those who then succeed to his rights. 18 C.J., Deeds, section 180; 26 C.J.S., Descent and Distribution, section 85. See, also, in this connection: *Ellis v. Barnes,* 181 N.C. 476, 106 S.E. 29; *Plemmons v. Murphey,* 176 N.C. 671, 97 S.E. 648; *Brown v. Brown,* 171 N.C. 649, 88 S.E. 870.

The persons succeeding to the unimpaired right of a decedent to ratify or repudiate a conveyance for fraud or undue influence vary, depending upon whether the decedent died testate or intestate, and whether the property involved is real or personal. When the property is realty, the right passes to the heirs in case of intestacy (*Pritchard v. Smith,* 160 N.C. 79, 75 S.E. 803), and to the devisees in case the grantor leaves a will. *Flythe v. Lassiter,* 199 N.C. 804, 153 S.E. 844; *Speed v. Perry,* 167 N.C. 122, 83 S.E. 176. As a rule, actions to impeach transfers of personalty made by a decedent in his lifetime must be brought by his personal representative, and not by his legatees or distributees. *Re Acken,* 144 Iowa 519, 123 N.W. 187, Ann. Cas. 1912A, 1166; 21 Am. Jur., Executors and Administrators, section 908. The legatees or distributees may sue, however, to recover personal assets of an estate when fraud, collusion, or a refusal to sue on the part of the personal representative renders such action necessary for the protection of ultimate rights accruing to them under a will or the statute of distribution. 26 C.J.S., Descent and Distribution, section 85; 34 C.J.S., Executors and Administrators, section 739.

The plaintiffs claim succession to the right to prosecute these actions as heirs and next of kin of their ancestor, A. F. Holt, Sr. Their testimony reveals, however, that the Clerk of the Superior Court of Johnston County has admitted to probate in common form as the last will of A. F. Holt, Sr., a certain paper writing, which is sufficient in form and substance to vest in the defendants all rights existing in A. F. Holt, Sr., at the time of his death. To be sure, the plaintiffs offered the record of such paper writing in evidence "for the purpose of attack," and undertake to avoid its legal effect as a testamentary conveyance of the rights of their ancestor to the defendants by asserting that its execution was induced by fraud or undue influence perpetrated on their ancestor by the defendants and their fellow conspirator, Clifton G. Holt. But the law does not permit the plaintiffs to assail the probated paper writing in this collateral fashion. Under the statute now codified as G.S. 31-19, the order of the Clerk admitting the paper writing to probate constitutes conclusive evidence that the paper writing is the valid will of the decedent until it is declared void by a competent tribunal on an issue of *devisavit vel non* in a caveat proceeding. *Whitehurst v. Hinton,* 209 N.C. 392, 184 S.E. 66; *Wells v. Odum,* 205 N.C. 110, 170 S.E. 145; *Crowell v. Bradsher,* 203 N.C. 492, 166 S.E. 731; *In re Will of Rowland,* 202 N.C. 373, 162 S.E. 897; *Moore v. Moore,* 198 N.C. 510, 152 S.E. 391; *In re Will of Cooper,* 196 N.C. 418, 145 S.E. 782; *Mills v. Mills,* 195 N.C. 595, 143 S.E. 130; *Bank v. Dustowe,* 188 N.C. 777, 125 S.E. 546; *Edwards v. White,* 180 N.C. 55, 103 S.E. 901; *Starnes v. Thompson,*

173 N.C. 466, 92 S.E. 259; *Holt v. Ziglar,* 163 N.C. 390, 79 S.E. 805; *McClure v. Spivey,* 123 N.C. 678, 31 S.E. 857.

This being true, the plaintiffs have no standing to maintain these suits until the probated paper writing is declared invalid as a testamentary instrument by a competent tribunal in a caveat proceeding; for such paper writing wills all rights existing in A. F. Holt, Sr., at the time of his death to the defendants, with the result that nothing descends to the heirs or next of kin. *Varner v. Johnston,* 112 N.C. 570, 17 S.E. 483; *Kashouty v. Deep,* 126 F. 2d 233; *Anglin v. Hooper,* 153 Ga. 734, 113 S.E. 195; *Murray v. McGuire,* 129 Ga. 269, 58 S.E. 841; *Reed v. Reed,* 225 Iowa 773, 281 N.W. 444; *Altfather v. Bloom,* 218 Mich. 582, 188 N.W. 428; *Green v. Sumby,* 230 Pa. 500, 79 A. 712; *Gilkerson v. Thompson,* 210 Pa. 355, 59 A. 1114.

This conclusion requires an affirmance of the compulsory nonsuits, and renders unnecessary any consideration of the questions whether the evidence adduced at the trial is sufficient to establish the facts constituting the causes of action alleged by plaintiffs, and whether such causes of action are barred by the statutes of limitation pleaded by defendants.

The judgments of involuntary nonsuit are

Affirmed.